196 November 13, 2015 No. 45

IN THE SUPREME COURT OF THE
STATE OF OREGON

Jason CHAPMAN
and Richard Gilbertson,
*Petitioners on Review,*

*v.*

Carroll MAYFIELD,
Gresham Players Club,
and Grant Baughman,
*Defendants,*

*and*

FRATERNAL ORDER OF EAGLES
GRESHAM AERIE #2151 GRESHAM OREGON,
dba Eagles Lodge #2151 Gresham,
*Respondent on Review.*

(CC 1012-16919; CA A150341; SC S062455)

En Banc

On review from the Court of Appeals.*

Argued and submitted April 22, 2015, at Marist High School, Eugene, Oregon.

J. Randolph Pickett, Pickett Dummigan LLP, Portland, argued the cause and filed the briefs for petitioners on review. With him on the briefs were R. Brendan Dummigan, Kristen West McCall, and Kimberly O. Weingart.

Jonathan Henderson, Davis Rothwell Earle & Xóchihua, P.C., Portland, argued the cause and filed the brief for respondent on review. With him on the brief were Nicole M. Rhoades and Daniel S. Hasson.

Lisa T. Hunt, Lake Oswego, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

––––––––––––
\* Appeal from Multnomah County Circuit Court, Karin J. Immergut, Judge. 263 Or App 528, 329 P3d 12 (2014).

BREWER, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**BREWER, J.**

In this negligence action, plaintiffs alleged in their complaint that, after being served alcohol at defendant's bar when he was visibly intoxicated, a patron, Mayfield, walked down the street to another business location and, without intending to do so, fired a gun through the doorway, causing injuries to plaintiffs for which they now seek recovery.[1] The trial court granted defendant's summary judgment motion, concluding that plaintiffs had presented insufficient evidence to permit an inference that the type of harm that plaintiffs suffered was reasonably foreseeable to defendant when it served alcohol to Mayfield while he was visibly intoxicated. A divided panel of the Court of Appeals affirmed the ensuing judgment dismissing plaintiffs' claim against defendant. *Chapman v. Mayfield*, 263 Or App 528, 329 P3d 12 (2014). On review, we conclude that plaintiffs' evidence was not sufficient to permit a trier of fact to find that the harm that plaintiffs suffered was a reasonably foreseeable risk of defendant's conduct. Accordingly, we affirm the judgment of the trial court and the decision of the Court of Appeals.

## I.   FACTS AND PROCEDURAL HISTORY

On the night in question, Mayfield, a 67-year-old retiree and self-described "homebody" with no criminal history, accompanied his friend Baughman to the bar on defendant's premises. Mayfield had never been to the Eagles Lodge before. While at the bar over a period of several hours, Mayfield drank several beers and at least one shot or a double shot of whiskey. Mayfield danced and had a good time; he did not behave violently. Defendant's employees described Mayfield as "very polite, kind" and a "very nice man." However, tragically, as it turned out, Mayfield was carrying a concealed handgun in his vest, a fact that none of defendant's employees knew or had reason to know.

---

[1] By "defendant," we refer to defendant Fraternal Order of Eagles Gresham Aerie #2151 Gresham, Oregon dba Eagles Lodge #2151 Gresham. Plaintiffs also brought claims in this action against Mayfield, the Gresham Players Club, and Mayfield's friend, Baughman. Those other defendants are not parties to this appeal.

After leaving defendant's premises, Mayfield walked down the street to the Gresham Inn. He approached the bar and asked for a beer. The bartender, Hutzler, refused to serve Mayfield after concluding, based on his observations, that Mayfield was intoxicated. Mayfield then walked across the street to the Gresham Players Club. Standing in the doorway, Mayfield pulled the concealed handgun from his vest and fired into the building, striking both of the plaintiffs and injuring them. No evidence in the record suggests any motive for Mayfield's actions.

Police arrested Mayfield that night and conducted two breathalyzer tests. The first test, administered at 1:14 a.m., showed Mayfield's breath sample to be 0.192% ethanol by weight. The second test, at 2:07 a.m., revealed 0.180% ethanol by weight. When questioned, Mayfield stated that he did not know why he had fired his gun into the Gresham Players Club; he did not remember the incident at all. Mayfield recalled wanting to leave the Eagles Lodge, but not being able to find Baughman. The next thing that Mayfield remembered was being in the police station.

This action ensued. Plaintiffs' claim against Mayfield alleged negligent or reckless—not intentional—tortious conduct. Consistently with Mayfield's version of events, plaintiffs alleged that Mayfield did not intend to fire his gun inside the Gresham Players Club and that he did not intend for shots to strike and injure plaintiffs. In their negligence claim against defendant, plaintiffs incorporated the foregoing allegations regarding Mayfield by reference. Plaintiffs further alleged that "[i]ntoxicated drinkers frequently become violent. [Defendant], which was in the business of selling alcohol, had reason to know that Mayfield would become violent, because those who are in the business of serving alcohol know that visibly intoxicated drinkers frequently become violent." In addition, plaintiffs alleged that defendant's negligence in serving alcohol to Mayfield when he was visibly intoxicated was a substantial factor in causing Mayfield to discharge his gun and in plaintiffs' resulting injuries.

Defendant filed a motion for summary judgment, asserting that there was no evidence that Mayfield's shooting

of plaintiffs was reasonably foreseeable to defendant. In response, plaintiffs argued that they were not required to prove that defendant should have foreseen a particular type of criminal assault—an attack with a gun—or that Mayfield, in particular, would become violent. In plaintiffs' view, they needed to prove only that defendant should have known of the risk of harm by violence to third parties when it served a visibly intoxicated patron. As evidentiary support for that proposition, plaintiffs submitted an excerpt from Hutzler's deposition testimony, as well as an affidavit from Dr. William Brady, a pathologist with expertise in alcohol physiology and effects.

Hutzler's deposition testimony described Mayfield's attempt to order a beer at the Gresham Inn and Hutzler's determination that he could not serve Mayfield because he was visibly intoxicated. In describing the Gresham Inn's location, the neighborhood, and its clientele, Hutzler stated that violence in the bar is not from drug use, but from alcohol. Violence occurred in the bar about once a month, and Hutzler said, "That's what alcohol is for. *** That's the alcohol talking."

In his affidavit, Brady used Mayfield's breathalyzer test results and the dissipation rate of alcohol for a person of Mayfield's size to extrapolate backwards and determine that, when Mayfield left defendant's bar, Mayfield's blood alcohol content was between 0.200% and 0.250%. At that level of blood alcohol content, Brady opined that Mayfield would have been visibly intoxicated and his decision-making processes severely impaired. Mayfield's behavior, according to Brady, also would have shown a lack of normal judgment and self-control. In Brady's opinion, Mayfield would have displayed visible signs of intoxication when he consumed his last two or three drinks at defendant's bar. Brady then averred that

> "[i]ntoxicated drinkers frequently become violent. *** The link between visible intoxication and increased levels of violence has been well-established in the medical, scientific, and lay literature for decades, if not more than a century."[2]

---

[2] Brady also stated, "Those who are in the business of serving alcohol know that visibly intoxicated persons frequently become violent." The trial court struck that sentence from Brady's affidavit on the ground that it lacked an adequate

From that evidence, plaintiffs argued that they had created a triable issue of fact that defendant should have foreseen the risk that serving a visibly intoxicated person would result in harm to plaintiffs.

In reply, defendant argued that evidence of overservice alone does not render a tavern patron's later criminal conduct reasonably foreseeable. Defendant characterized plaintiffs' theory of relief as relying on the broad assertion that an unspecified portion of society "frequently" becomes violent when intoxicated, while providing no evidence that Mayfield had any prior history of violence—either while intoxicated or sober—or that defendant had any knowledge regarding a risk of violence associated with the intoxication of its patrons. Further, according to defendant, plaintiffs failed to adduce evidence that injury from a random and unprovoked attack with a gun is the type of harm that was a reasonably foreseeable result of serving Mayfield while he was visibly intoxicated or that strangers at a different location were members of a class of plaintiffs that reasonably could be expected to suffer such harm.

After a hearing, the trial court issued a letter opinion granting defendant's summary judgment motion. The court first concluded that plaintiffs had presented evidence that created a genuine issue of material fact regarding whether defendant had served Mayfield while he was visibly intoxicated. Nonetheless, the court determined that plaintiffs had failed to produce sufficient evidence to show that the type of harm that they suffered was reasonably foreseeable. The court acknowledged that plaintiffs were not required to prove that the exact manner in which the harm occurred was foreseeable or that Mayfield had known violent tendencies. However, the court concluded that the mere fact that defendant had served Mayfield while he was visibly intoxicated was insufficient to prove that defendant reasonably should have foreseen the random and unprovoked kind of harm that Mayfield inflicted on plaintiffs.

---

foundation. As the Court of Appeals noted, the parties disagree as to the scope and correctness of the trial court's ruling; however, plaintiffs did not assign error to the ruling. *Chapman*, 263 Or App at 533 n 2. Accordingly, we do not consider whether the trial court erred in striking the sentence from Brady's affidavit, and we deem the record to include the entirety of the affidavit except that sentence. *See id.*

On appeal, plaintiffs reprised their arguments before the trial court. Among other arguments, plaintiffs emphasized Brady's assertion that the link between intoxication and violence has been established in medical, scientific, and lay literature for decades. Because tavern owners are part of the lay community, plaintiffs argued that persons in the business of serving alcohol especially should be aware of that link. According to plaintiffs, Brady's affidavit, coupled with Hutzler's deposition testimony, created a reasonable inference that tavern owners know or should know that violence is a foreseeable result of alcohol intoxication.

As noted, the Court of Appeals affirmed. *Chapman*, 263 Or App at 530. Relying on previous decisions of this court, the majority determined that, to prove foreseeability, plaintiffs were required to adduce evidence beyond the fact of overservice to support an inference that defendant knew or had reason to know of an unreasonable risk that Mayfield would become violent. *Id.* at 531 (citing *Moore v. Willis*, 307 Or 254, 260-61, 767 P2d 62 (1988); *Hawkins v. Conklin*, 307 Or 262, 269, 768 P2d 66 (1988)). The majority described two different ways in which a plaintiff could prove that a defendant knew or should have known of the risk of violence from furnishing alcohol to a visibly intoxicated patron. First, a plaintiff could show that a defendant's general observations and experience in the business of serving alcohol gave it reason to know that violence is a reasonably foreseeable result of overservice. *Id.* at 532 (citing *Moore*, 307 Or at 260-61). Alternatively, a plaintiff could show that a defendant knew or should have known that a particular patron had a propensity for violence that could be triggered by serving additional alcohol. *Id.* (citing *Hawkins*, 307 Or at 269). Because plaintiffs had adduced no evidence that Mayfield had a propensity for violence, the majority analyzed plaintiffs' claim under the first approach. *Id.* at 534.

The Court of Appeals primarily focused on two aspects of plaintiffs' evidence: (1) Brady's statements that "[i]ntoxicated drinkers frequently become violent" and that the link between visible intoxication and increased violence has been noted in medical, scientific, and lay literature for decades, and (2) Hutzler's testimony that, in his experience

as a bartender at the Gresham Inn, violence is "the alcohol talking." *Id.* at 532-33. Because it believed that a finder of fact would need to draw too many conjectural inferences from that evidence, the majority concluded that plaintiffs had not shown that defendant should have known that overserving Mayfield would create an unreasonable risk that he would act violently. *Id.* at 535. The court reasoned that, to make that finding, a trier of fact would have to infer that persons in the business of selling alcohol not only know what doctors and experts in alcohol physiology know, but that they also would have read the unspecified literature mentioned in Brady's affidavit. *Id.* Further, the court reasoned, a trier of fact would have to infer from Hutzler's deposition testimony that the Gresham Inn's clientele was similar to defendant's clientele or to the clientele of other bars in order to generalize Hutzler's experiences and observations either to defendant or to bars in general. *Id.* at 535-36. Because the majority deemed that chain of inferences to be speculative, it ultimately concluded that plaintiffs' evidence was insufficient to permit a finding that defendant knew or should have known that overserving Mayfield created an unreasonable risk that he would act violently. *Id.* at 536.

Judge Egan dissented. He agreed with the majority that, in cases involving tavern patron violence, a plaintiff must allege specific facts—more than visible intoxication and everyday knowledge—that support an inference that the defendant knew or should have known of the danger to others. *Id.* at 541 (Egan, J., dissenting). However, in the dissent's view, the majority improperly analyzed each piece of plaintiffs' evidence separately, rather than looking at the evidence as a whole. *Id.* at 547. The dissent argued that the majority's focus on the aspects of plaintiffs' evidence described above excluded inferences that could be drawn from the evidence as a whole. In particular, the dissent emphasized Brady's statements that, in light of Mayfield's blood alcohol content, he not only would have been visibly intoxicated, but also would have lacked normal judgment and self-control. *Id.* at 545. The dissent argued from that evidence that it was reasonable to infer that Mayfield would act in a manner that created unreasonable risks of harm. *Id.* at 547. The dissent also pointed to Hutzler's deposition

testimony that he had been trained to evaluate whether a patron had had too much to drink and that he had refused to serve Mayfield because he was visibly intoxicated. *Id.* at 546. Together with Hutzler's statement that violence is "the alcohol talking," the dissent argued that it was reasonable to infer that a person in the business of serving alcohol should know that a connection exists between intoxication and violence. *Id.* at 547. The dissent acknowledged that the evidentiary record was "thin," but it nevertheless concluded that plaintiffs had established a triable issue of fact with respect to foreseeability. *Id.* at 549-50.[3]

On review, plaintiffs ask this court to hold that proof of service of alcohol to a visibly intoxicated person, by itself, is sufficient to create a jury question as to whether any subsequent violent conduct by the person was foreseeable or, alternatively, to hold that plaintiffs' evidentiary showing—when viewed as a whole—was sufficient to create a genuine issue of material fact as to foreseeability.

## II.  ANALYSIS

### A.  *Standard of Review*

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. ORCP 47 C. That standard is satisfied when, viewing the evidence in the record and all reasonable inferences that may be drawn from it in favor of the nonmoving party, no reasonable factfinder could return a verdict for the nonmoving party. *Id.* The burden rests with the nonmoving party to produce evidence on any issue raised in the motion as to which the nonmoving party would have the burden of persuasion at trial. *Id.* In this

---

[3]  To buttress the record, the dissent observed that, while *Moore* and *Hawkins* were working their way through the courts, the legislature enacted Oregon's mandatory professional alcohol server education program in 1987. *Id.* at 541. According to the dissent, an OLCC education program implementing that enactment teaches servers about the effects of alcohol on the body and on behavior; the prohibition on the sale of alcohol to intoxicated persons; and the fact that alcohol consumption is a major factor in "serious crimes including murder, suicide, assault, rape and domestic abuse." *Id.* at 542-43. None of that material was included in the summary judgment record in this case, and plaintiffs do not assert that it is subject to judicial notice. Accordingly, we do not consider it here.

case, plaintiffs, as the nonmoving parties, had the burden of producing evidence on the elements of their claim, including foreseeability.

B.   *General Principles of Negligence*

Traditionally, the elements of common-law negligence required a plaintiff to plead and prove that the "defendant owed [the plaintiff] a duty, that [the] defendant breached that duty, and that the breach was the cause-in-fact of some legally cognizable damage to [the] plaintiff." *Brennen v. City of Eugene*, 285 Or 401, 405, 591 P2d 719 (1979). However, under this court's contemporary jurisprudence, the traditional duty-breach analysis is subsumed in the concept of general foreseeability, "unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty." *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987); *see generally Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 340, 83 P3d 322 (2004) (discussing shift in Oregon jurisprudence).[4] Despite that shift, causation-in-fact and the occurrence of legally cognizable harm (damage) remain as elements of any common-law negligence claim. *Oregon Steel Mills*, 336 Or at 340. Thus, when a claim for common-law negligence is premised on general principles of foreseeability, the plaintiff must plead and prove that the defendant's conduct created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff. *See generally Towe v. Sacagawea, Inc.*, 357 Or 74, 86, 347 P3d 766 (2015); *Oregon Steel Mills*, 336 Or at 340; *Fazzolari*, 303 Or at 17.

A trial court's screening role, when it is invoked, is to "determine whether upon the facts alleged or the evidence presented no reasonable factfinder could decide one or more elements of liability for one or the other party." *Fazzolari*, 303 Or at 17.

---

[4] When no special status, relationship, or standard of care is alleged, a plaintiff does not need to prove that the defendant owed the plaintiff a duty, because—as a general proposition—everyone owes a duty to others to act reasonably in light of foreseeable risks of harm. *Towe v. Sacagawea, Inc.*, 357 Or 74, 86, 47 P3d 766 (2015).

## C.   *Foreseeability as a Limit on the Scope of Liability*

Because the parties do not invoke a status, relationship, or particular standard of conduct that informs defendant's duty,[5] the dispositive question in this case is whether plaintiffs' evidence raised a triable issue of fact as to whether defendant's conduct created a foreseeable and unreasonable risk of harm to plaintiffs. That inquiry includes the more particular questions of whether plaintiffs' injuries were within the type of potential harms that made defendant's conduct unreasonable and whether plaintiffs were within a reasonably foreseeable class of injured persons. *Towe*, 357 Or at 86; *Fazzolari*, 303 Or at 17.

Foreseeability involves a prospective factual judgment about a course of events. *Fazzolari*, 303 Or at 4. Foreseeability (what prospectively might happen) is considered separately from causation (what retrospectively did happen) and serves as a limit on the scope of liability. *Id.* at 13. That is, "the community deems a person to be [liable] only when the injury caused * * * is one which could have been anticipated because there was a reasonable likelihood that it could happen." *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 609, 469 P2d 783 (1970). It is not necessary that the risk of harm be more probable than not; rather, the question is whether a reasonable person considering the potential harms that might result from his or her conduct would "have reasonably expected the injury to occur." *Id.* at 609-10.

The community's judgment, usually given voice by a jury, determines whether the defendant's conduct met that threshold in the factual circumstances of any particular case. *Id.* at 607. If, and only if, the court determines that the defendant's conduct clearly falls outside the community's conception of fault, the issue of foreseeability must be withdrawn from the jury. *Id.* at 609. Where the plaintiff's injury arises from a "concatenation of highly unusual circumstances," the harm is deemed unforeseeable as a matter of law. *See id.*

Over the course of the past five decades, this court has struggled earnestly to give informed meaning to those

---

[5] In particular, we note that plaintiffs do not cite any statute as setting the standard for defendant's conduct in their common-law negligence claim.

principles. The five cases discussed below illustrate this court's application of the foreseeability doctrine as a limit on the scope of a defendant's liability for negligence. The discussion begins with foreseeability generally, then more specifically involving third party criminal conduct, and finally, involving the overservice of alcohol where injuries occurred off the defendant's premises.

In *Stewart*, a negligently started fire spread from the defendant's sawmill to a neighboring warehouse. *Id.* at 605. The plaintiff came to the scene to assist firefighters; he worked to put out sparks and control the fire from the rooftop of the warehouse. *Id.* As he assisted in fighting the fire, the plaintiff fell through a concealed skylight on the warehouse roof and sustained injuries. *Id.* at 605-06. In the negligence action that ensued, a jury returned a verdict for the plaintiff, and the defendant appealed. *Id.* at 605.

In considering whether a trier of fact could find that the plaintiff's injury was foreseeable, this court stated that a reasonable person could foresee that a negligently started fire could spread to a neighbor's property and that the neighbor or another person might be injured attempting to extinguish the fire. *Id.* at 610. The potential injuries could result from any number of possible circumstances—from being burned, from falling off a ladder, from falling off a roof, or from falling through a burned portion of a roof. *Id.* Although this court acknowledged that falling through a skylight—particularly a concealed skylight—might not be a common cause of injury, that circumstance was not so uncommon that the defendant could not reasonably foresee the risk of harm. *Id.* The record included no statistical evidence showing the frequency of injuries due to falls through skylights, but this court observed that a covered skylight likely would expose a person on a roof to a risk of harm and that it was not unlikely that an "injury would occur in this manner in the course of fighting a fire." *Id.* at 611. Accordingly, this court affirmed the judgment for the plaintiff.

In *Stewart*, the court described the type of harm more generally—injuries that may occur while fighting a fire—rather than specifically—injuries incurred from falling through a concealed skylight while fighting a fire. In

using a more general description of the type of harm at risk, rather than describing the specific events that caused the injuries, this court recognized that any conception of foreseeability necessarily depends on how the type of harm is described. *Id.* at 610. Describing the type of harm in very general terms often results in the conclusion that the risk of harm was foreseeable; describing the type of harm too specifically, using a mechanism-of-harm approach, more often results in the conclusion that the risk of harm was not foreseeable. *Id.*

At first blush, the court's choice of a more general level of abstraction in describing the type of harm that the plaintiff suffered might appear to be a thumb on the scale in favor of liability. However, as part of determining whether the defendant's conduct was unreasonable, there is nothing surprising about a conception of foreseeability that assesses the overall "setting for possible injury" under the plaintiff's theory of liability. *See id.* at 610. Drawing on the plaintiff's theory of liability, the court in *Stewart* determined that it was not unlikely that an "injury would occur in this manner *in the course of fighting a fire.*" *Id.* at 611 (emphasis added). That approach, which views the defendant's conduct through the lens of the particular factual circumstances of the case—with emphasis on what the defendant knew or should have known about the risk of harm to a particular class of plaintiffs—has been this court's practice in cases that address foreseeability as a limit on liability.

1.  *Third-party criminal conduct*

Two of this court's previous decisions involving third-party criminal conduct illustrate the importance of how the type of harm at risk is described under the particular circumstances of the case. In *Fazzolari*, a 15-year-old-girl walking up the steps of her high school early in the morning was attacked, pulled into the bushes, and raped. 303 Or at 3. The plaintiff brought a negligence action against the school district for her injuries; the trial court granted the school district's motion for a directed verdict. *Id.* On review, this court reversed. *Id.* Consistently with *Stewart*, the court concentrated on two aspects of foreseeability: (1) describing

the type of harm at risk more generally, rather than predicting an actual sequence of events, and (2) focusing on what the defendant knew or reasonably should have known about the risk and the class of plaintiffs exposed to that risk in light of the particular factual circumstances of the case. *Id.* at 21-22.

In describing the type of harm at risk, this court in *Fazzolari* reiterated that an assessment of foreseeability does not involve the precise, mechanical prediction of events for which a defendant would be expected to argue; on the other hand, the court observed, it does not adopt a paranoid view of the world that encompasses all sources of potential injury that a plaintiff might propose. *Id.* at 21. Applying the conception of foreseeability from *Stewart* to the circumstances before it, the court observed that a school's responsibility for a student's safety is not limited to the risk of rape, but also extends to other types of assault, whether by fellow students or other persons. *Id.* at 21. The court stated that, if a school knew of assaults at specific locations on school property, a trier of fact could find that a school should warn students of the risk. *Id.* at 22. Importantly, evidence in the trial record showed that the school district knew of a previous sexual assault on the school grounds that had occurred 15 days before the attack on the plaintiff. *Id.* at 21. In reversing the judgment for the school district, this court concluded that a trier of fact could find that the type of harm that the plaintiff suffered was reasonably foreseeable to the district in light of the known risk of harm. *Id.* at 22.

A subsequent case involving third-party criminal conduct once again focused on the particular factual circumstances of the case, but also recognized a limit on how generally the type of harm at risk can be described. In *Buchler v. Oregon Corrections Div.*, 316 Or 499, 853 P2d 798 (1993), this court considered whether the state could be held liable in negligence for the death and serious injury of the victims of violence inflicted by an escaped prisoner. 316 Or at 502. The prisoner was a member of a work crew in a remote location. The crew supervisor had left a state van's keys in the ignition. The prisoner escaped in the van, drove 50 miles to his mother's house, stole a gun, and, two days after the escape, shot two people, killing one of them. *Id.* The trial

court granted the state's summary judgment motion, and, on review, the plaintiffs' claims raised three issues concerning foreseeability relating to the plaintiffs' various theories of negligence.

The first issue involved the state's special duty as the custodian of the prisoner. This court adopted *Restatement (Second) of Torts* section 319 (1965), which provides that a custodian has a duty to control a prisoner if the custodian knows or should know that the prisoner is "likely to cause bodily harm to others if not controlled." Considering the particular circumstances of the case, including the fact that the prisoner had no history of violence and that the shootings occurred two days after the escape, the court determined that no trier of fact reasonably could find that the state, as a custodian, should have known that the prisoner was "likely to cause bodily harm"; therefore, the plaintiffs' injuries were not the legally foreseeable consequence of the state's alleged negligence in allowing the prisoner to escape.[6] *Buchler*, 316 Or at 507.

The second foreseeability issue concerned the plaintiffs' claim that the state negligently had failed to warn people in the area of the prisoner's mother's home that the prisoner had escaped. *Id*. at 514. The court noted that the plaintiff had presented no evidence that the state knew or should have known that the prisoner would be near his mother's home, that the prisoner's mother lived in the area, or that the prisoner had stolen a gun from his mother's home. *Id*. at 515. In the absence of evidence that the state knew or should have known that there was an unreasonable risk that the prisoner would shoot someone or that persons in the vicinity of his mother's home would be expected victims, this court concluded that it was not reasonably foreseeable to the state that the prisoner posed a risk of harm to persons in the plaintiffs' position. *Id*. at 516.

The third foreseeability issue in *Buchler* involved the plaintiffs' claim that the state had facilitated the harm to the victims by leaving the van's keys in the ignition. *Id*.

---

[6] The court expressed no opinion regarding whether a trier of fact could reasonably find that a nonviolent prisoner would be "likely to cause bodily harm" during the actual escape from custody. *Id*. at 507.

at 507. With regard to that issue, the court discussed—and overruled—another case, *Kimbler v. Stillwell*, 303 Or 23, 734 P2d 1344 (1987), *overruled by Buchler*, 316 Or at 513. In *Kimbler*, the victim's personal representative brought a wrongful death action against a retail store, alleging that the defendant had not adequately secured its shotguns and ammunition, which allowed a third party to steal those items and use them to murder the victim. 303 Or at 25. The personal representative alleged that the defendant knew or should have known that the lack of security made the shotguns and ammunition an easy target for theft, that stolen weapons are often used to commit crimes, and that the defendant's manner of displaying the shotguns and ammunition created an unreasonable risk of harm. *Id.* In holding that the complaint alleged facts sufficient to constitute a claim for relief, this court stated:

> "The fact that a plaintiff's injury was inflicted by the intentional, even criminal, act of a third person does not foreclose liability if such an act was a foreseeable risk facilitated by the defendant's alleged negligence."

*Id.* at 27-28.

This court in *Buchler* described the complaint in *Kimbler* as alleging that (1) guns are dangerous; (2) thieves steal guns; (3) "as a matter of common knowledge," stolen guns are used to commit crimes against third parties; and (4) the defendant failed to prevent the theft of the guns that were used to harm the plaintiff at a later time and a different location. *Buchler*, 316 Or at 511. According to the court in *Buchler*, that theory of relief charged the defendant with "responsibility for all intervening intentional criminal conduct that might conceivably occur." *Id.* The sweep of *Kimbler*, the court said, was inconsistent with a conception of foreseeability by which a defendant is liable only where it *unreasonably* created the risk of the type of harm that the plaintiff suffered. *Id.* Accordingly, the court in *Buchler* disavowed *Kimbler*'s "facilitation" rationale. *Id.*

The court explained that describing the type of harm at risk too generally—such as stating that criminals commit crimes or that escaped prisoners may commit crimes while at large—makes criminal acts the legal responsibility

of everyone who may have contributed in some way to the criminal opportunity. *Id.* Such a conception would sweep too broadly because "mere 'facilitation' of an unintended adverse result, where intervening intentional criminality of another person is the harm-producing force, does not cause the harm so as to support liability for it." *Id.* at 511-12. The court in *Buchler* ultimately concluded that the harm that the plaintiffs suffered was not a reasonably foreseeable consequence of the risk created by leaving the keys in the van. *Id.* at 514.

### 2. *Off- premises crimes in alcohol liability cases*

Two cases involving off-premises crimes committed after the service of alcohol to visibly intoxicated patrons are particularly pertinent to our analysis. Both cases addressed foreseeability at the pleading stage and focused on what—in the particular factual circumstances of the case—the defendant knew or reasonably should have known about the risk of harm and the possible victims of that harm.

In *Moore*, two taverns served two patrons while they were visibly intoxicated.[7] 307 Or at 256. A bartender at the second tavern called a taxi for the patrons; after an altercation between the patrons and the taxi driver, a gun was drawn and the taxi driver was killed. *Id.* The driver's personal representative brought a common-law negligence action against the tavern owners, alleging that the defendants were negligent in selling alcohol to the patrons when they were visibly intoxicated and that the defendants' negligence caused the driver's death.[8] *Id.* at 257-58. The defendants moved for judgment on the pleadings, arguing that the complaint did not adequately allege foreseeability,

---

[7] One of the patrons was under the age of 21. *Id.* In a separate specification, the plaintiff alleged that the defendants were negligent for serving an underage patron as well as for serving both visibly intoxicated patrons. *Id.* at 257-58.

[8] The plaintiff also brought a statutory liability claim under *former* ORS 30.950 (1979), *renumbered as* ORS 471.565 (2001), which provided:

"No licensee or permittee is liable for damages incurred or caused by intoxicated patrons off the licensee's or permittee's business premises unless the licensee or permittee has served or provided the patron alcoholic beverages when such patron was visibly intoxicated."

Because this court recently had held that *former* ORS 30.950 (1983) did not provide a statutory remedy to plaintiffs injured in an assault, *see Gattman v. Favro*, 306 Or 11, 24, 757 P2d 402 (1988), the court did not discuss the plaintiff's statutory liability claim, *Moore*, 307 Or at 256-57.

and the trial court granted that motion. *Id.* at 257. In affirming the judgment for the defendants, this court held that a "complaint must allege facts that would allow the factfinder to determine that the [tavern owners] should have known of the danger to others." *Id.* at 261.

Because the complaint in *Moore* did not allege any facts connecting the overconsumption of alcohol to violence, the narrow issue before the court was whether the fact that the two patrons were visibly intoxicated was sufficient for a trier of fact to find that the victim's death was reasonably foreseeable. *Id.* at 260. The court stated that the mere fact that a patron is visibly intoxicated does not make it foreseeable that serving the patron alcohol creates an unreasonable risk that the patron will become violent. *Id.* The court elaborated:

> "It may be common for intoxicated and underage drinkers to become violent. If violence is common among intoxicated and underage drinkers, those who are in the business of serving alcohol and who frequently observe people's reaction to alcohol may have reason to foresee the type of harm that arose in this case. At the pleading stage, however, a court cannot simply assume that it is common for intoxicated or underage drinkers to become violent in order to support an inference that violence is a foreseeable result of serving alcohol to someone who is intoxicated."

*Id.* at 260-61 (citing *Chartrand v. Coos Bay Tavern*, 298 Or 689, 694, 696 P2d 513 (1985) (judicial belief that intoxicated patrons commonly drive from taverns cannot supply foreseeability element)). The court stated that, if the plaintiff claimed that the defendants had reason to know that the patrons "would become violent because those who are in the business of serving alcohol know that visibly intoxicated * * * drinkers frequently become violent, the plaintiff must allege that intoxicated and underage drinkers frequently become violent." *Id.* at 261. In the absence of additional facts bearing on the foreseeability of violent harm to the taxi driver, the court concluded that the complaint failed to state a claim for relief. *Id.*

*Hawkins* also concerned an off-premises assault after a tavern served alcohol to a visibly intoxicated patron.

307 Or at 264. *Hawkins* involved a group of unruly patrons who, after being ejected from the tavern, assaulted another patron by shoving him into the path of an oncoming car. *Id.* at 264-65. The assault occurred in the street and in a parking lot near the tavern, not on the tavern's premises. *Id.* at 265 n 2. The injured patron brought an action against the tavern owner, alleging that the defendant was negligent (1) in serving the unruly patrons while they were visibly intoxicated; (2) in failing to call the police to remove the patrons after they threw chairs across the bar and threatened other patrons with pool cues; and (3) in not providing the plaintiff with protection when he left the tavern at about the same time that the unruly group was ejected. *Id.* at 264. The defendant moved for judgment on the pleadings, which the trial court granted. *Id.*

On review, this court affirmed the trial court's ruling, in part because, as in *Moore*, the plaintiff had failed to allege particular facts showing that the tavern owner knew or should have known of an unreasonable risk of harm to the plaintiff.[9] The court explained,

> "The plaintiff alleged that [the group of unruly patrons] threw chairs and threatened other patrons in the tavern, but he did not allege that the [tavern] knew about the threats and unruly conduct or that the [tavern] otherwise had reason to know of [the group of unruly patron's] violent propensities at the time the [tavern] served alcohol to [the group of unruly patrons]. Without alleging facts that would allow a jury to determine that the [tavern] should have foreseen the risk of harm, the plaintiff cannot state a common law negligence claim."

*Id.* at 269.

---

[9] The court's foreseeability analysis arguably was *dictum*. The court already had held that *former* ORS 30.950 (1985) barred the plaintiff's common-law negligence claims of failing to call the police and failing to provide protection because the plaintiff did not allege that the defendant served the unruly patrons while they were visibly intoxicated in connection with those claims. *Hawkins*, 307 Or at 268. The court stated that the allegation that the tavern served the unruly patrons while they were visibly intoxicated was part of the plaintiff's statutory liability claim but, arguably, was not included in the common-law claims. *Id.* at 268-69. Perhaps unnecessarily, the court then considered whether the plaintiff had adequately alleged foreseeability, on the assumption that the allegation of overservice was incorporated into the common-law claims. *Id.* at 269.

Consistently with the other decisions that we have discussed, *Moore* and *Hawkins* indicate that a plaintiff must allege factual circumstances that, if proved, would permit a trier of fact to find that the defendant knew or should have known of an unreasonable risk of harm—including the risk of harm from intentional violence—to a foreseeable plaintiff. Missing from the complaint in *Hawkins*, for example, were factual allegations that the tavern knew that the unruly patrons had thrown chairs and threatened other patrons before the defendant served them while they were visibly intoxicated. *Id*. Likewise, if the plaintiff in *Moore* had alleged facts showing that the defendants should have known of an unreasonable risk that their patrons would become violent, the complaint adequately would have alleged—based on the particular factual circumstances of that case—that the defendant should have known of an unreasonable risk of harm to a foreseeable plaintiff, the taxi driver whom one of the defendants called to pick up the intoxicated patrons. *Moore*, 307 Or at 261.

D.   *Whether Serving a Visibly Intoxicated Person, By Itself, Establishes Foreseeability*

As noted, plaintiffs initially argue that evidence that a tavern served alcohol to a visibly intoxicated person should be sufficient to create a triable issue of fact as to whether any subsequent violent conduct by the visibly intoxicated person was foreseeable. To that end, plaintiffs urge us to reexamine *Moore* in light of changes to the legislative landscape concerning alcohol awareness and education, as well as other public policy considerations.

Plaintiffs note that this court provided the foreseeability element as a matter of law in *Campbell v. Carpenter*, 279 Or 237, 566 P2d 893 (1977), a negligence action for injuries sustained in a drunk driving accident. In *Campbell*, this court held that "a tavern keeper is negligent if, at the time of serving drinks to a customer, that customer is 'visibly' intoxicated because at that time it is reasonably foreseeable that when such a customer leaves the tavern he or she will drive an automobile." *Id*. at 243-44. Plaintiffs also note that, in *Hawkins*, this court stated that *former* ORS 30.950 (1979), *renumbered as* ORS 471.565 (2001), which

codified the holding in *Campbell*, did not limit common-law liability based on the manner in which the intoxicated person injured the plaintiff, and that the legislative history of *former* ORS 30.950 (1979) does not distinguish among types of risks of harm associated with intoxication. *See Hawkins*, 307 Or at 268 n 6. Plaintiffs suggest that, because this court held in *Campbell* that overservice established foreseeability as a matter of law in a drunk driving case, the same result should obtain where violent harm is inflicted by an overserved patron.

Defendant responds that *Moore* was correctly decided; drawing on the facts of this case, defendant asserts that evidence of service of alcohol to a visibly intoxicated person, standing alone, does not make it reasonably foreseeable that the person will become violent, much less randomly shoot two strangers. Defendant asserts that it did not know or have any reason to know that Mayfield was carrying a concealed gun or that he had any violent propensities. Defendant also points out that the record contains no evidence that anyone had ever become violent at its premises. Defendant argues that the random, unprovoked shootings that occurred in this case constitute a concatenation of highly unusual circumstances of the sort that this court in *Stewart* deemed unforeseeable as a matter of law.

Citing *Moore*, *Hawkins*, and an earlier decision, defendant notes that this court repeatedly has held that, to hold a tavern liable for injuries to a third party resulting from a criminal assault, the plaintiff must establish that it was foreseeable to the defendant that serving the person would create an unreasonable risk of violent conduct. *See also, e.g.*, *Reynolds v. Nichols*, 276 Or 597, 601, 556 P2d 102 (1976) ("If the complaint had alleged that defendants served intoxicating liquors to [the assailant] with reason to know that the combination of liquor and [the assailant's] violent propensities would prompt him to assault plaintiff, it is arguable that a cause of action might have been stated."). Defendant also points out that, although this court in *Campbell* apparently took judicial notice of the fact that many tavern patrons drive vehicles after drinking and that car accidents resulting from drinking are frequent, this court later held that a plaintiff must still plead and prove that the defendant tavern owner

knew or should have known that the patron would drive a vehicle from the tavern. *See Chartrand*, 298 Or at 694-95. In defendant's view, if serving alcohol to a visibly intoxicated person, standing alone, is not sufficient to show that a subsequent drunk driving accident was reasonably foreseeable, then proof of overservice alone cannot establish that a random shooting was reasonably foreseeable.

Finally, defendant argues that plaintiffs' proposed rule of law would impose strict liability on tavern owners, which, defendant contends, would be inconsistent with certain legislatively enacted public policy pronouncements that serve to limit the circumstances in which alcohol providers can be liable for injuries caused by a patron.[10] For those reasons, defendant urges this court to adhere to its holding in *Moore* that evidence of a patron's visible intoxication, standing alone, does not make it foreseeable that serving more alcohol to the patron would create an unreasonable risk of violent harm to others.

We agree with defendant that the principles of foreseeability discussed above, bearing on how generally the type of harm at risk is described and the significance of the particular circumstances of the case, require a plaintiff to prove more than that a tavern served a visibly intoxicated patron. Although we disagree with defendant's assertion that allowing evidence of service to a visibly intoxicated person, by itself, to establish foreseeability would create strict liability for alcohol providers, we do agree that such a conception would permit a jury to decide foreseeability in all cases in which a plaintiff alleged service to a visibly intoxicated person without permitting a court to evaluate the sufficiency of the plaintiff's allegations in a particular case. *See Bellikka v. Green*, 306 Or 630, 639, 762 P2d 997 (1988) ("[Q]uestions of foreseeable risk and reasonable action in

---

[10] *See former* ORS 30.950 (1979) (amended in 1987 to impose a heightened "clear and convincing" standard of proof on claimants, *see* Or Laws 1987, ch 774, § 13, and amended in 2001 to prohibit claims by plaintiffs who cannot prove, by clear and convincing evidence, that they did not "substantially contribute to the intoxication of the patron or guest," whether by providing or furnishing the alcohol to the patron or guest, encouraging the patron or guest to drink, or facilitating the consumption of alcohol by the patron or guest, Or Laws 2001, ch 534, § 1).

light of the risk ordinarily depend on examining a defendant's action in the particular circumstances.").

As an example of the pitfalls posed by such a loose conception of foreseeability, defendant invokes the hypothetical of a social host having a neighborhood barbeque. Under plaintiffs' conception, a jury could consider whether to hold the host liable for injuries caused by a visibly intoxicated guest who took a beer from the cooler and then, after returning home, committed an act of domestic violence, even if no facts other than the defendant's service and the guest's visible intoxication were alleged. Similarly, in this case, with the benefit of hindsight, it is possible to connect Mayfield's shooting of two strangers at a different location with defendant's conduct in overserving him. Hindsight, however is not foreseeability. We cannot say that, in every case in which a plaintiff adduces evidence of overservice, a reasonable juror could find an assault by the intoxicated person to be foreseeable. Although it may be common knowledge that intoxicated people often have impaired judgment and may, therefore, act improperly, such general knowledge is not sufficient to permit a jury to decide, from the fact of overservice alone, that one who serves alcohol to a visibly intoxicated person should reasonably have expected that that person would commit an assault. *See Buchler*, 316 Or at 511. We decline plaintiffs' invitation to extend the limits of foreseeability that far.

E.  *Whether Plaintiffs' Evidence Created a Genuine Issue of Material Fact*

Because we conclude that evidence of overservice alone is not enough, we must determine whether plaintiffs presented additional evidence that, considered as a whole, was sufficient to create a genuine issue of material fact on foreseeability. Turning to the particular factual circumstances of this case, plaintiffs argue that evidence respecting general observations and experiences "in the business of serving alcohol" gave defendant reason to know that violence would be a foreseeable result of serving alcohol to a visibly intoxicated patron. Plaintiffs assert that, taken together, Brady's affidavit and Hutzler's deposition testimony showed that (1) intoxicated drinkers frequently become violent;

(2) the link between visible intoxication and increased levels of violence has been well understood and publicized for decades; and (3) professional servers are aware of a connection between alcohol and violence. That evidence, plaintiffs argue, permitted an inference that defendant should have known that overserving Mayfield created an unreasonable risk of violent harm to plaintiffs. Plaintiffs assert that a contrary holding would allow negligent tavern owners, by feigning ignorance, to avoid liability for harm stemming from alcohol-related violence.

Defendant responds that plaintiffs' evidence was insufficient to create a triable issue of fact. Specifically, defendant argues that Brady's assertion that "[i]ntoxicated drinkers frequently become violent" does not support an inference that serving a visibly intoxicated person makes it reasonably foreseeable that the intoxicated person will become violent and randomly shoot strangers. Nor, defendant asserts, does Brady's statement support an inference that defendant was aware of that "fact" or that overserving a seemingly peaceable patron makes it reasonably foreseeable that the patron will become violent. Defendant argues that Brady's statement was too conclusory and generalized; it did not indicate which intoxicated drinkers become violent or how often intoxicated drinkers become violent. In defendant's view, Brady's general assertions are tantamount to positing that criminals are likely to commit crimes, a conception of foreseeability that this court rejected in *Buchler*.

Defendant argues that plaintiffs' remaining evidence was insufficient to create a triable issue of fact for three reasons. First, it is illogical to infer that laypersons, such as bartenders and tavern owners, have the same knowledge as Brady, an experienced medical professional. Second, it is unreasonable to assume that persons in the business of selling alcohol have read the unidentified literature to which Brady referred, some of which is directed at medical and scientific professionals. Third, Hutzler's experience cannot be attributed to defendant because it is not reasonable to infer that an establishment with very different clientele would have similar enough experiences to generalize Hutzler's observations to defendant or to bars generally. Such an inference actually would contradict other

evidence that plaintiffs proffered, according to defendant, because Hutzler testified that his own establishment had experienced patron violence about once a month, whereas defendant had never experienced patron violence before.

To create a triable issue of fact with respect to foreseeability, plaintiffs' were required to show that defendant knew or should have known that overserving alcohol to Mayfield would create an unreasonable risk of harm to plaintiffs of the type that they suffered. *See Towe*, 357 Or at 86; *Stewart*, 255 Or at 609-10. Plaintiffs do not contend that defendant knew that overservice could result in violence of the type that ensued in this case. Rather, plaintiffs contend that defendant should have known of that risk of harm. In that regard, plaintiffs offered two primary pieces of evidence: (1) Brady's testimony that intoxicated persons frequently become violent and that medical, scientific, and lay journals have documented a connection between violence and alcohol for decades; and (2) Hutzler's experiential observations about the link between alcohol and violence.[11]

As discussed, even though the precise mechanism of harm need not be foreseeable, it is necessary to describe the type of harm at risk and the class of plaintiffs at risk with reference to the particular factual circumstances of the case, as gleaned from the pleadings and evidence in the record. Based on the circumstances of this case, we conclude that the appropriate characterization of the type of harm at issue is an unintentional attack by a visibly intoxicated patron after he had left defendant's premises. *Cf. Fazzolari*, 303 Or at 21-22 (characterizing type of harm from failing to provide adequate warning or security as an assault on students at school); *Stewart*, 255 Or at 610 (describing type of harm from negligently setting fire as injuries that may occur while attempting to extinguish fire). We further conclude that plaintiffs' evidence was insufficient because it described the risk of harm too generally.

As explained, evidence that it is common knowledge that intoxicated people have impaired judgment and

---

[11] Because the issue is what defendant should have known—not what it actually knew—about an unreasonable risk of harm to plaintiffs, we need not consider what evidence would have sufficed to create a triable issue of fact with respect to actual knowledge.

may, therefore, behave improperly is too general to establish that a person who serves a visibly intoxicated person reasonably should expect that that person will commit an assault. Evidence making the bare assertion that it is common knowledge that visibly intoxicated persons frequently become violent is no more sufficient. Such evidence does not create a permissible inference that a particular defendant should have been aware of an unreasonable risk of violent harm or that a particular plaintiff was within the class of persons at risk of such harm. Perhaps, if other, more specific evidence had been adduced, our conclusion might be different. For instance, had the evidence shown the rate of incidence of violence among intoxicated drinkers, the types of intoxicated drinkers who become violent, or the class of persons at risk of violent harm from a visibly intoxicated person, different inferences may have been permissible so as to preclude summary judgment for defendant.[12]

Those omissions distinguish the circumstances of this case from those in *Stewart*, where this court was willing, in the absence of more direct evidence, to use general knowledge to supply an inference that the defendant should have known that a negligently started fire reasonably could be expected to result in harm to firefighters, even though the precise mechanism of harm could not be foreseen. *Stewart*, 255 Or at 611 (although record did not contain statistics on frequency of injuries resulting from falling through concealed skylights, "general knowledge" of way injuries occur supported foreseeability of how injury could occur in such manner). In *Stewart*, it was rational to permit an inference, based on facts in the record and the general knowledge that courts expect juries to bring to their task, that a negligently started fire will attract firefighters who reasonably can be expected to incur injuries while engaging in a hazardous activity.[13]

---

[12] The described examples are illustrative; we do not suggest that plaintiffs were required to produce all or any particular quantum of such evidence to create a triable issue of fact with respect to foreseeability. Nor do we suggest that any particular combination of such evidence would have sufficed to create a triable issue of fact in this case.

[13] *See, e.g.*, *Christensen v. Epley*, 287 Or 539, 563, 601 P2d 1216 (1979) (Tongue, J., concurring) ("Jurors, as men and women of the world, are expected to evaluate evidence not only in the light of their general experience, but in the light of facts generally known in the community.").

Here, in contrast, plaintiffs' evidentiary proffer did not include facts that would justify supplying an inference—based on general knowledge—that defendant should have known that serving alcohol to a visibly intoxicated Mayfield reasonably could be expected to result in his unintentional attack on plaintiffs at a different location. *See Buchler*, 316 Or at 511 (disavowing broad conception of foreseeability based on purported "common knowledge" connecting thieves, guns, and crimes); *see also Moore*, 307 Or at 260-61 (court cannot assume that intoxicated drinkers become violent); *Chartrand*, 298 Or at 695 ("[J]udicial notice cannot replace the need for proof of an essential element of the tort claim * * * *i.e.*, proof that the defendant knew or should have known that the customer would drive a vehicle from the tavern.").

### III.   CONCLUSION

This court previously has "cautioned against turning fact-specific decisions on foreseeability into rules of law." *See, e.g.*, *Bailey v. Lewis Farm, Inc.*, 343 Or 276, 289, 171 P3d 336 (2007) (citing *Fazzolari*, 303 Or at 16). We do not depart from that precept here; rather, our decision turns on the specific facts in the record before us. In this case, plaintiffs' evidence failed to create a genuine issue of material fact as to foreseeability because (1) it described the type of harm at risk too generally, and (2) it did not provide any relevant information that would permit a trier of fact to find that defendant knew or should have known that overserving Mayfield would create an unreasonable risk of the type of harm that plaintiffs suffered.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.