Argued October 27, 1969, affirmed May 28, 1970

# STEWART, *Respondent, v.* JEFFERSON
# PLYWOOD COMPANY, *Appellant.*

### 469 P2d 783

*William M. Holmes,* Bend, argued the cause for appellant. On the briefs were Gray, Fancher, Holmes & Hurley.

*R. L. Marceau,* Bend, argued the cause for respondent. With him on the brief were McKay, Panner, Johnson & Marceau.

Before PERRY,* Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN,** DENECKE and HOLMAN, Justices.

O'CONNELL, J.

This is an action to recover damages for personal injuries incurred by plaintiff while attempting to extinguish a fire which was started by defendant's employee. Defendant demurred to plaintiff's complaint on the ground that it failed to state a cause of action.

---

\* Perry, C.J., did not participate in this decision.
\*\* Goodwin, J., resigned December 19, 1969.

The demurrer was overruled. The court also denied defendant's motion for a judgment of involuntary nonsuit. The jury returned a verdict in favor of plaintiff. Defendant appeals.

Defendant is the owner of a sawmill in Madras, Oregon. In the afternoon of August 3, 1966, one of the defendant's employees was at work in the mill constructing a piece of mill equipment with the use of an electric cutting and welding tool. Sparks and slag from the welding operation ignited sawdust near the working area, which spread through the mill. The fire subsequently spread to defendant's log deck approximately 1,000 feet from the mill. Sparks from the log deck began to fall on the roof of the Pacific Supply Cooperative warehouse which was across a railroad right of way from the log deck. Fire fighting equipment was brought to the scene of the fire and efforts were made to keep the fire from spreading to the warehouse.

Plaintiff first learned about the fire while at home listening to the radio. It was reported that the fire was out of control and that "they could use all the help they could get." Plaintiff drove his car to the warehouse and asked one of the firemen where he could be of assistance. He was informed that men were needed on the warehouse roof to put out the sparks and otherwise control the fire. Plaintiff and other men were hoisted onto the roof through the use of a forklift. In the course of attempting to put out the fire plaintiff fell through a covered skylight onto the floor in the interior of the warehouse, causing the injuries for which recovery is sought.

The warehouse roof was made of corrugated metal. The skylight opening was covered by a piece of cor-

rugated plastic. The corrugated plastic was "pushed under and laid just like the rest of the—more or less like the rest of the roof." The entire roof was covered by a film of dust which came from the cleaning of grass seed and grain in the warehouse. Because of the dust film there was no difference in the color of the sky-light and the color of the roof.

There was sufficient evidence to establish a cause in fact connection between the careless conduct of defendant's employee and plaintiff's injury. And there is ample evidence that defendant's employee failed to exercise reasonable care in carrying on the welding operation.

The only question for our consideration is whether defendant is legally responsible for plaintiff's harm, the cause of which can, in part at least, be attributed to defendant's conduct.

The scope of the liability of an actor whose conduct is a substantial factor in causing an injury is frequently discussed under the rubric "proximate cause" or "legal cause," and less frequently as a part of the definition of negligence. We have adopted the latter approach.[1] Whatever language is used to categorize the problem, the inquiry is essentially the same: (1) what factors are relevant in setting the limits of liability for conduct which is a cause, in a substantial sense, of an injury, and (2) what are the respective functions of the court and jury in passing upon the question of the defendant's liability?

In attempting to answer these questions we have found little enlightenment from reading the vast

---

[1] Babler Bros. v. Pacific Intermountain, 244 Or 459, 415 P2d 735 (1966); Mezyk v. National Repossessions, 241 Or 333, 405 P2d 840 (1965); Hills v. McGillvrey, 240 Or 476, 402 P2d 722 (1965); Dewey v. Klaveness, 233 Or 515, 379 P2d 560 (1963).

amount of legal literature on the subject. Generally speaking, there is very little agreement among the scholars; each writer, in presenting his analysis of the problem, finds unsatisfactory the solution offered by others. The semantic problems created by such highly abstract concepts as "negligence," "risk," "foreseeability," "fault" and the like, make communication on the subject almost impossible.[9]

We are left, then, with the task of working out as best we can our own formulation for drawing the line at which the defendant's liability ends.

The temptation here is to leave the question to the jury where the problem can be solved by an intuitive process, thus relieving us from the judicial task of reaching a reasoned conclusion. Unfortunately, however, we have inherited the duty to exercise control over the jury and to keep it within the bounds set for it, vague as they may be.

■ The issue of the defendant's negligence or the plaintiff's contributory negligence is frequently withdrawn from the jury and is resolved by the trial court or by this court as a matter of law. The jury is given a wide leeway in deciding whether the conduct in question falls above or below the standard of reasonable conduct deemed to have been set by the community. The court intervenes only when it can say that the actor's conduct clearly meets the standard or clearly falls below it.

Implicit in this process is the assumption that judges as well as juries know something about the kind

---

[9] See Probert, Causation in the Negligence Jargon: A Plea for Balanced "Realism," 18 Fla L Rev 369 (1965).

Even those conscious of the need for a careful identification of referrants have communication difficulties. See, for example, Cole, Windfall and Probability: A Study of "Cause" in Negligence Law, 52 Calif L Rev 459 (1964).

of conduct that is deemed acceptable or not acceptable in the community and that, at least at the higher and lower ends of the continuum of that standard, the court can say that the conduct does or does not meet the standard.

The premise upon which this standard is based is the concept that an actor should not be liable unless he is at fault in the legal sense. Although legal fault is not the exact equivalent of moral fault,[9] the predicate is blameworthiness in some sense; the actor being regarded as blameworthy if his conduct is, according to community standards, generally considered as creating a danger to persons in the situation in which the plaintiff finds himself.[10] "Thus the standard represents the general level of moral judgment of the community, what it feels ought ordinarily be done, and not necessarily what is ordinarily done, although in practice the two would very often come to the same thing." 2 Harper & James, The Law of Torts, p. 903 (1956).

An important corollary of this principle is that "liability is confined to harms actually resulting that

---

[9] "* * * [L]egal fault—at least in negligence actions—has never corresponded exactly with moral fault. The standard applied by the law to determine whether a man has been negligent has always been in large part an external, objective, standard." 2 Harper & James, The Law of Torts § 12.1, p. 745 (1956).

See also, Cohen, Fault and the Automobile Accident: The Lost Issue in California, 12 UCLA L Rev 164, 184 (1964):

"* * * It may be, that in some areas when liability is imposed on the basis of negligent conduct—the area of professional malpractice is one—it is possible to describe behavior determined to be negligent as morally reprehensible. However, under the negligence system as it is administered with reference to the automobile, liability is routinely imposed for conduct that not even the strictest moralist could taint with the slightest disapprobation."

[10] This is not to say that the decision made by the jury or by the court will not, in some cases, be affected by other factors such as the ability to bear or shift the loss.

are of the general kind to be anticipated from the conduct and, for the same reason, liability is confined to situations in which the person harmed is one of the general class threatened."[9]

This idea of limiting liability to that which can be anticipated is formulated into the foreseeability test for negligence, which states that one is negligent only if he, as an ordinary reasonable person, ought reasonably to foresee that he will expose another to an unreasonable risk of harm. Foreseeability is an element of fault; the community deems a person to be at fault only when the injury caused by him is one which could have been anticipated because there was a reasonable likelihood that it could happen.

■ Thus fault, as the term is usually understood, is not associated with conduct which causes harm through the concatenation of highly unusual circumstances.[10] If, in our appraisal of the community's conception of fault, we find that the conduct in question clearly falls outside the conception, we are charged with the duty of withdrawing the issue from the jury.

■ The specific question before us is, then, whether plaintiff's injury and the manner of its occurrence was so highly unusual that we can say as a matter of law that a reasonable man, making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur. Stated in another way, the question is whether the circumstances are out of the range within which a jury

---

[9] 1 Harper & James, The Law of Torts, Introductory p. xl (1956).

[10] But cf., Restatement (Second) of Torts, § 435 (2) and comment (1965).

could determine that the injury was reasonably foreseeable.[7]

Whether the harm in a particular case is deemed foreseeable may depend upon the manner in which we describe "harm." It has been observed that "if we use a very generalized description of the type of harm that was foreseeable and of the type of harm that occurred, an answer that the result was within the risk is inevitable."[8] And on the other hand, "[i]f we use a detailed, mechanism-of-harm description of the result and the risks, the answer will be negative."[9]

A reasonable man could foresee that a fire started by him might spread to his neighbor's building and that in the effort to extinguish the fire his neighbor or a third person coming to his aid might be injured as a result of a variety of possible circumstances—by being burned, by falling off a ladder, by falling off a roof, by falling through a burned portion of the roof, or by other similar risks normally associated with fighting fires.

It is less likely that an injury would occur as a result of falling through a skylight and even less likely that one would fall through a skylight because it was covered in a manner that made it appear to be a solid part of the roof. But, although such conditions may not be a common cause of injury, on the other hand it cannot be said that this setting for possible injury is so uncommon that a jury could not reasonably describe as foreseeable the risk of harm which it creates.

---

[7] But cf., Green, Foreseeability in Negligence Law, 61 Colum L Rev 1401 (1961).
[8] Keeton, Legal Cause in the Law of Torts, p. 51 (1963).
[9] Id.

We do not have any statistics showing the frequency with which persons are injured as a result of falling through covered skylights. We know, however, from our general knowledge of the way in which injuries occur, that a covered skylight might well expose a person on a roof to a risk of harm. Further, it is not unlikely that the injury would occur in this manner in the course of fighting a fire.

Equating likelihood of harm to fault, we are of the opinion that the likelihood of harm occurring as it did in this case is such that it might well be considered as blameworthy within the community's sense of fault. If we could say that defendant's conduct would not be deemed blameworthy according to the community's sense of fault, we would not permit the jury to impose liability.

However, that is not the case here and therefore the jury is entitled to decide that defendant should be charged with plaintiff's loss.

Defendant contends that the court erred in refusing to give the following requested instruction:

"A plaintiff who voluntarily assumes the position of danger, the hazards of which he understands and appreciates, cannot recover from a risk incident to the position of danger that is perfectly obvious or the kind which the plaintiff and not the defendant must look out for."

The trial court gave all of the foregoing instruction except the phrase "or the kind which the plaintiff and not the defendant must look out for."

Defendant argues that "plaintiff was a stranger to the defendant and he voluntarily went on the premises over which the defendant had no custody or control

\* \* \*. Plaintiff was also fully aware of the risks incident to going onto the warehouse roof. Defendant owed plaintiff no duty and plaintiff voluntarily assumed the risks incident to fighting the fire on the warehouse roof. [Plaintiff] was the only one in a position to look out for risk or danger."

If the foregoing is an argument that the risk involved is not the kind that defendant could reasonably have foreseen, then we can only repeat what we have already said—the jury could have found that the injury was reasonably foreseeable.

If defendant is arguing that plaintiff assumed the risk because it was obvious to him, then the contention is answered in the following excerpt from 2 Harper & James, The Law of Torts, § 21.1, pp. 1165, 1167-68 (1956):

> "It is clear then that the concept of assumption of risk in the primary sense is not to be considered in a situation where defendant has breached a duty towards plaintiff \* \* \*. This means specifically that even when a danger is fully known and comprehended plaintiff is not barred from recovery simply because he chooses deliberately to encounter it, in the following situations:
>
> "\* \* \* \* \*
>
> "(7) Where plaintiff seeks to rescue another person, or his own or another's property which is endangered by defendant's negligence. \* \* \* Of course the means of rescue chosen might be so unreasonable as to amount to negligence even in the light of the emergency. If so, plaintiff will be barred for contributory negligence but not for want of breach of duty toward him."

■■ It is now fairly well established that one who is injured in an attempt to rescue another person's property which is endangerd by defendant's negligence

may recover for the injury.⑩ Since defendant owed a duty to plaintiff, the defense of assumption of risk is not applicable.

The jury was instructed on the doctrine of contributory negligence. No error is assigned with respect to that instruction.

■ It is contended that the trial court erred in instructing the jury that the doctrine of res ipsa was applicable in this case. In *Waterway Terminals Co. v. P. S. Lord*, 242 Or 1, 406 P2d 556, 13 ALR3d 1 (1965), the doctrine was applied in a situation where a fire originated as a result of a welding operation. In that case the court said:

> "There is cogent evidence here that the fire was caused by electric arc welding done by employees of the defendant Lord, a hazardous operation calling for special precautions, *Hershey Chocolate Corp. v. The S.S. Robert Luckenbach*, supra 184 F Supp at 137; and we think that fires do not ordinarily occur in the course of such an operation if those who have the management exercise care commensurate with the danger involved [citing cases]." 242 Or at 54.

Defendant argues that the present case is distinguishable from the *Waterway Terminals* case, because in that case the court found "cogent evidence

---

⑩ In support of the view that the so-called "rescue doctrine" is applicable where one is injured in attempting to save a third person's property, see Liming v. Illinois Central R. Co., 81 Iowa 246, 47 NW 66 (1890); Walker Hauling Company v. Johnson, 110 Ga App 620, 139 SE2d 496 (1964). See also, 64 ALR 515, 529 (1929); 166 ALR 752, 758 (1947).

The present case is to be distinguished from Spencer v. B. P. John Furniture Corp., 90 Or Adv Sh 837, 467 P2d 429 (1970). There we held that a professional fireman was not entitled to recover for an injury received in the course of fighting a fire. The basis for the decision is that a fireman is compensated for the risk he assumes. That rule is not applicable where, as in the present case, the fireman receives no compensation for his efforts.

\* \* \* that the fire was caused by electric arc welding" and that defendant had control of the welding, whereas in the present case there was an absence of such evidence.

We think that there was sufficient evidence from which the jury could reasonably find that the sparks and slag from the welding operation carried on by defendant's employee found their way to inflammable material in the surrounding area and caused the initial fire. The present case is, therefore, not distinguishable from *Waterway Terminals v. P. S. Lord, supra.*

The judgment is affirmed.