Argued September 15, affirmed November 24, 1971

GUNN, *Respondent, v.* HI-C-HOME, INC., *Appellant.*

490 P2d 999

*Asa L. Lewelling,* Salem, argued the cause and filed a brief for appellant.

*J. W. Walton,* Corvallis, argued the cause for respondent. On the brief were Ringo, Walton, McClain & Eves.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL, and BRYSON, Justices.

McALLISTER, J.

The plaintiff fell and broke her hip at the nursing home operated by defendant. The trial court, sans jury, awarded plaintiff a judgment from which defendant appeals. The only question is the sufficiency of the evidence to support a finding that defendant was negligent.

There is little dispute about the facts. Defendant operated a nursing home in Corvallis. Plaintiff was an 80-year-old widow, who had been slightly disabled by a stroke, used a cane at times, but was ambulatory. She had been staying at the home about two months immediately before her injury, but prior thereto had been an intermittent patient at the home.

Plaintiff was injured about mid-morning on a warm, sunny day in June, 1967. She was standing in the forecourt of the home talking to another elderly patient, Abigail Magorian. The two ladies were standing within a few feet of a concrete pool containing a fountain. The pool was about eight to ten feet square, with walls about 20 inches high, surmounted by a wrought iron fence. The fountain was operated by a submersible pump, which sprayed water into the air through a cluster of nozzles in the center of the pool. The water from the fountain all fell back into

the pool. The fountain was usually turned on each day during the morning and operated until the late evening.

While the ladies were talking the fountain was turned on by an employee of defendant without any warning or notice to the ladies. The activation of the fountain startled plaintiff and caused her to fall and break her hip.

The evidence is conflicting, but there is considerable evidence that the fountain made a noise when it was turned on. Plaintiff's son-in-law was experienced in hydraulics and had been visiting the plaintiff at the nursing home on at least one occasion before her injury when the pump was turned on. He testified:

"Q Now, would you describe what happened on the occasion you observed that fountain turned on?

"A Well, this occasion that comes to mind, the first time I heard it and I believe I should explain that a submersible center centrifugal pump that has been described in the testimony, of which I have not personally looked at myself, but I know from experience that when your nozzles are way up high, which is quite an elaborate system, these small nozzles that are a quarter inch and eighth inch and numerous of them, that when the pump—when a pump is shut off this water level gradually leaks down through the seals and all comes down to the level of the pond. But when a centrifugal pump is engaged it forces the air very rapidly out of the pipes ahead of a pump and going through the small nozzles acts like a whistle, and it's what I observed was very startling.

"Q What kind of noise was it that you heard, sir?

"A Well—

"Q   Just describe the noise as best you can.

"A   Well, if an airplane had come over the building at a very low altitude, I mean, 50 feet above you, it's just a roar, it comes so quickly that it's startling.

"Q   All right.

"A   It would be to me, or was to me."

Mrs. Magorian, who was talking to plaintiff when the fountain was turned on, testified as follows:

"Q   Now, did you see anybody else out there while you were talking to Mrs. Gunn?

"A   Well, no, not for awhile. We sat there— stood there and talked and all of a sudden Mr. Erickson came out there and he stood there for a minute, and then he went back in and he turned on the water for that lake, that fenced place where the water was.

"Q   What happened when the water came on?

"A   It scared the life out of her.

\*   \*   \*   \*   \*

"Q   All right, Mrs. Magorian. Here, let me ask you now: Would you describe the noise to us, please, that it made?

"A   Well, it was just all of a rumble. You know how water will come out, you know, because it was in—it's kind of a lake there that's fenced around there. And he drained it at night, and then he turned it on in the daytime, see. And he come out there and seen it wasn't on and he went back in, and he never told us what he was going to do, but all of a sudden he turned that water on and it—it was such a rumble and such a noise it just scared her and she fell flat right down there on the concrete."

■ The question is one of foreseeability and the test is whether an ordinary reasonable person ought to foresee that his conduct will expose another to an un-

reasonable risk of harm. *Stewart v. Jefferson Plywood Co.,* 255 Or 603, 609, 469 P2d 783 (1970).①

2. Although this case is extremely close we think there is evidence to support the trial court's judgment. Plaintiff's physical infirmity was well known to defendant. In light of plaintiff's age and physical condition, and the evidence concerning the noise made by turning on the fountain, the trial court could properly find that defendant should reasonably have foreseen that its conduct in turning on the fountain when plaintiff was standing nearby without warning her would expose plaintiff to an unreasonable risk of harm.

The judgment is affirmed.

O'CONNELL, C. J., dissenting.

As we observed in *Stewart v. Jefferson Plywood Company,* 255 Or 603, 469 P2d 783, 785 (1970), the courts "have inherited the duty to exercise control over the jury and to keep it within the bounds set for it, vague as they may be."

In exercising that control the court must make a preliminary judgment as to whether the jury could reasonably find that an injury was foreseeable. "Implicit in this process" we said, "is the assumption that judges as well as juries know something about the kind of conduct that is deemed acceptable or not acceptable in the community * * *."

---

① "This idea of limiting liability to that which can be anticipated is formulated into the foreseeability test for negligence, which states that one is negligent only if he, as an ordinary reasonable person, ought reasonably to foresee that he will expose another to an unreasonable risk of harm. Foreseeability is an element of fault; the community deems a person to be at fault only when the injury caused by him is one which could have been anticipated because there was a reasonable likelihood that it could happen." 255 Or at 609.

In the present case the trial judge was the trier of fact. I do not think that it was reasonable for him or for a jury to conclude that the injury was foreseeable. There is nothing about fountains in general which would suggest to a reasonable man that it would produce a startling noise. Nor is there any evidence that defendant's servants knew or had reason to know that the fountain in the present case would produce such a noise.

Accepting the evidence of plaintiff's witness, as incredible as it seems, that the fountain made a noise equivalent to that of an airplane flying 50 feet above the ground, the evidence would prove only what someone heard after the fact—it does not prove that defendant's servants knew, or had reason to know, or should have known that the fountain would make a startling sound.

The judgment should be reversed.