Argued and submitted September 16, 2020; decision of Court of Appeals reversed, and case remanded to Court of Appeals for further proceedings April 8, 2021

Kyle K. WALKER,
*Petitioner on Review,*

*v.*

STATE OF OREGON,
by and through the Semi-Independent State Agency,
the Oregon Travel Information Council,
branded and doing business as
the Oregon Travel Experience,
*Respondent on Review.*

(CC 15CV02202) (CA A163420) (SC S067211)

484 P3d 1035

Plaintiff brought a statutory whistleblowing claim under ORS 659A.203(1) and a common-law wrongful discharge claim against her employer, a semi-independent state agency, alleging that the employer had unlawfully fired her for whistleblowing. A jury found in favor of plaintiff on her wrongful discharge claim and awarded damages, but the trial court, sitting in equity, dismissed plaintiff's statutory whistleblowing claim. The Court of Appeals affirmed the dismissal of the statutory claim and reversed the judgment for plaintiff on the wrongful discharge claim. The Court of Appeals concluded that plaintiff had not asserted an important public duty under the tort, because plaintiff did not have a reasonable belief that her employer had violated the law. *Held*: (1) To successfully assert a common-law claim for wrongful discharge, the employee must identify an important public policy, as demonstrated by sources of law, that the employee's claimed protected activity furthers, which is a question of law for a court; and (2) in the context of statutory whistleblowing claims under ORS 659A.203(1), whether a public employee had a reasonable belief that her employer had violated a law is usually a factual determination reserved for the trier of fact.

The decision of the Court of Appeals is reversed and remanded for further proceedings.

En Banc

On review from the Court of Appeals.*

Shayna M. Rogers, Garrett Hemann Robertson, PC, Salem, argued the cause for petitioner on review. Luke W.

_____

* Appeal from Marion County Circuit Court, Mary Mertens James, Judge. 299 Or App 432, 450 P3d 19 (2019).

Reese filed the briefs. Also on the briefs was Elizabeth L. Polay.

Denise G. Fjordbeck, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

NAKAMOTO, J.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.

## NAKAMOTO, J.

An employee who is fired from an at-will position may, in some cases, assert a common-law claim of wrongful discharge. In this case, plaintiff persuaded a jury that her public employer had wrongfully discharged her for blowing the whistle on what she reasonably believed to be her employer's violations of law. The trial court had denied her employer's motions for a directed verdict, and the court entered a judgment that awarded her damages on that claim. The Court of Appeals reversed, holding that, notwithstanding the jury verdict in her favor, plaintiff's action had not served an important public policy. *Walker v. Oregon Travel Information Council*, 299 Or App 432, 450 P3d 19 (2019).

We now reverse the Court of Appeals and remand the case to that court for further proceedings. The Court of Appeals incorrectly concluded that the threshold issue— whether plaintiff had identified an important public policy that permitted her to assert the tort of wrongful discharge— depended on whether she had reasonably believed that her employer had violated the law; instead, that threshold issue properly turns on sources of law that support the asserted public policy and whether those sources of law are tied to the acts by plaintiff that led her employer to discharge her. We further conclude that whether plaintiff had a reasonable belief that her employer had violated the law—the disputed element of whistleblowing on appeal—is a question of fact for the factfinder and that the record contains evidence that supports the jury's finding.

## I.   BACKGROUND

Plaintiff Kyle Walker, the chief executive officer of a semi-independent state agency, the Oregon Travel Experience, was fired by the agency's governing body, the Oregon Travel Information Council. She was an at-will employee, meaning that, generally, "in the absence of a contract or legislation to the contrary," the Council could discharge her "at any time and for any cause." *Nees v. Hocks*, 272 Or 210, 216, 536 P2d 512 (1975). Plaintiff filed an action against defendant "the State of Oregon, by and through *** the *** Council,"

and asserted two claims. One claim was for whistleblowing as a public employee, a statutory claim governed by ORS 659A.203(1).[1] The other was a common-law claim for wrongful discharge, a tort that this court recognized in *Nees* as protecting at-will employees who are discharged from employment for engaging in protected conduct.

Defendant's motions for a directed verdict on plaintiff's wrongful discharge claim are at issue on review. Accordingly, we review the evidence in the light most favorable to plaintiff, because the jury returned a verdict for her. *Green v. Uncle Don's Mobile City*, 279 Or 425, 427, 568 P2d 1375 (1977). We recite the facts consistently with that standard of review.

The Oregon Travel Experience (OTE) is a semi-independent agency responsible for blue roadway informational signs, historical marker signs, and rest areas along Oregon's highways. The Council, OTE's governing body, is composed of 11 volunteer members. The Council has the authority, according to its bylaws, to establish an Executive Committee, whose responsibilities include appointing the agency's CEO[2] and evaluating the CEO's performance. The CEO of OTE is responsible for the agency's day-to-day operations and serves "at the pleasure of the Council." ORS 377.835(7) (2013).[3] The CEO is also in administrative control of the Council and is authorized to hire and set the

---

[1] The 2015 version of the public employee whistleblower statute applied to plaintiff's claim. In part, ORS 659A.203(1) (2015) provided that "it is an unlawful employment practice for any public employer to"

"(b) Prohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of:

"(A) A violation of any federal or state law, rule or regulation by the state, agency or political subdivision."

Unless otherwise stated, further references to ORS 659A.203 in this opinion are to the 2015 version.

[2] Although plaintiff's statutory title was "director," the parties referred to plaintiff as the "CEO" within the agency and throughout the litigation.

[3] The governing statute at the time, ORS 377.835(7) (2013), provided:

"The council shall be under the administrative control of a director who is appointed by and who holds office at the pleasure of the council. The director of the council may appoint all subordinate officers and employees of the council and may prescribe their duties and fix their compensation. The director of the council may delegate to any subordinate officer or employee any

salary for OTE's paid staff. *Id.* The CEO's salary, however, is under the exclusive authority of the Council according to its bylaws.

Three months before the Council appointed plaintiff as CEO in December 2012, the Secretary of State conducted an audit that determined that greater transparency and accountability was needed within the agency. An audit performed the previous year also recommended that the Council establish an employee classification and salary structure for staff. Plaintiff was hired to bring the agency into compliance with the Secretary of State's audit and to implement the audit's recommendations. According to her employment offer, the Council would not adjust plaintiff's salary during her first year as CEO.

Soon after plaintiff became CEO, conflict arose between her and the Council. Friction stemmed from plaintiff's attempt to fulfill the audit's recommendation to create a more objective salary structure for staff. The Council was concerned that OTE's management compensation was too high and that it was "top-heavy." Both plaintiff and the Council understood that salary adjustments had to be made from the "top-down"—meaning that plaintiff's salary, as CEO, would establish the benchmark for setting other staff salaries—but the parties disagreed on how to model a new salary structure. Plaintiff intended to rely on the Department of Administrative Services (DAS) "Hay" system salary range as a compensation model for OTE. However, as a semi-independent agency, OTE is not required to follow the DAS system salary range. Thus, the Council instructed plaintiff not to rely on the DAS system salary range as a compensation model and told her to develop a salary structure that complied with the Council's stated objectives and proposed budget instead.

Plaintiff disagreed with the Council's instruction and relied on the DAS system salary range as a model in proposing a new salary structure. She concluded that it was the best way to establish an objective salary scheme

administrative duty, function or power imposed upon the council by or pursuant to law."

References to ORS 377.835(7) in this opinion are to the 2013 version.

and to bring the agency's salary structure into compliance with the audit. She evaluated CEO compensation at other semi-independent state agencies to determine an appropriate "benchmark" CEO salary and provided her salary structure proposal to the Council in June 2013. The Council was unhappy with plaintiff's proposal. The Council believed that plaintiff's inclusion of an adjustment to her own salary, before the one-year mark of employment, was plaintiff's demand for a raise and a failure to accept the Council's authority to set her compensation. Plaintiff's view was that her proposal was not a demand for a raise, but rather that her salary was included in the report because it was used as a benchmark to inform the Council on how the remaining salaries would cascade down from her own as the highest.

In January 2014, plaintiff implemented the new staff salary structure without giving prior notice to the Council. Plaintiff had statutory authority under ORS 377.835(7) to implement the new salary structure without first garnering Council approval. That statute authorized the CEO to "fix the[] compensation" for staff. Despite her statutory authority, plaintiff had earlier agreed to share with the Council her changes to the initial salary proposal so that the Council could ensure that the salary changes conformed to the budget. The Council did not learn of the new salary structure implementation until mid-February.

Once the Council learned about the new staff salaries, the Council chair requested that plaintiff meet with the Executive Committee on March 12, 2014, to discuss plaintiff's actions regarding the salary structure. Before that meeting, plaintiff's executive assistant, at plaintiff's direction, asked the Oregon Department of Justice whether the meeting would be considered a public meeting and would require notice under Oregon's Public Meetings Law. An attorney with the Department of Justice advised that the meeting would need to be noticed, pursuant to ORS 192.630(1), as a meeting of the agency's governing body. Plaintiff's executive assistant then asked the Council chair whether the meeting should be noticed, and the Council chair told her that the meeting did not need to be noticed. Although plaintiff knew that it was her responsibility, as CEO, to provide notice of public meetings—and that the

March 2014 meeting would be held in violation of Oregon's public meetings law—she did not want to defy the chair's instruction because she knew that she served "at the pleasure of the [C]ouncil" and feared that she already was at risk of being terminated at the meeting.

Plaintiff was not terminated at the March 2014 meeting; however, conflict regarding plaintiff's and the Council's respective roles and authority persisted. In light of the continued conflict, on April 8, 2014, plaintiff sent a memorandum to Michael Jordan, the chief operations officer of the State of Oregon and the head of DAS. As the state's chief operations officer, Jordan acted as the Governor's manager over Oregon's executive branch. In the memorandum, plaintiff detailed 13 concerns that she had about the Council's actions, including the following:

"6.    The Executive Committee is currently out of compliance with current Council operating procedures, and statute regarding roles and authorities.

"*****

"11.    The Chair and Executive Committee have violated public meeting law.

"12.    The Executive Committee are [*sic*] attempting to micromanage agency operations under the guise of 'broad direction' without Council authority directing how the salary structure should be changed and how employees will be rated on performance evaluations without regard to the Classification and Salary study. They do not recognize the authority of the CEO per statute regarding these matters.

"*****

"Over the past three weeks this has escalated to a point that intervention is needed to prevent the agency from moving further into conflict, to reduce organizational risk and to mitigate the potential for unnecessary public exposure or employee litigation. ***

"I am deeply saddened by the situation. As an elected [*sic*] official and representative of the public trust, my ethics and background in public governance prevent me from being a party to or condoning to [*sic*] these actions. I am unwilling to support the direction of the Executive Committee without the involvement of the entire Council,

their willingness to adhere to statute and public meeting law, and operate in a transparent and accountable manner."

The Council chair acknowledged that, after plaintiff sent her memorandum to Jordan, the Governor's office called the Council chair to alert her that plaintiff had complained to Jordan. Conflict between plaintiff and the Council continued through the spring and summer before the Council ultimately terminated plaintiff's employment in October 2014. Thus, at trial, plaintiff had evidence that the Council was aware of her complaint before her discharge.

Following her termination, plaintiff initiated this action for common-law wrongful discharge and statutory whistleblowing under ORS 659A.203(1)(b). Plaintiff alleged that her memorandum to Jordan qualified as protected whistleblowing. Plaintiff contended that she had fulfilled an important public duty by reporting the Council's illegal conduct, namely, that the Council's March 12, 2014, meeting was held in violation of the public meetings law and that the Council had interfered with plaintiff's management of OTE in violation of her statutory authority to set employee compensation and administer OTE generally.

While the statutory whistleblowing claim was tried to the court sitting in equity, based on the equitable nature of the remedies that the 2015 version of the statute then afforded, plaintiff's wrongful discharge claim was tried to a jury. The trial court denied defendant's motions for a directed verdict on the tort claim after plaintiff's case-in-chief and after the close of all the evidence.

After explaining that certain kinds of protected whistleblowing may support a wrongful discharge claim, the trial court instructed the jury at length as to what acts do and do not constitute protected whistleblowing. The court defined whistleblowing as "disclosing information that the plaintiff reasonably believed was evidence that her employer had engaged in a violation of a state or federal law, rule, or regulation." Among other things, the jury instructions specified eight different circumstances in which a plaintiff's disclosures would not constitute whistleblowing. One of those concerned the reasonableness of plaintiff's belief about her employer's violations of law. The jury was instructed that

if "[p]laintiff lacked an objectively reasonable belief (*i.e.*, a belief that a reasonable person in similar circumstance would be expected to have) that the information that she disclosed would reveal a violation of law," then she did not engage in whistleblowing. Additionally, the jury was separately instructed that "[p]laintiff and council members disagreed about the scope of their respective roles and responsibilities in running the agency" and that "[t]hose disagreements are not whistleblowing."

The jury found in plaintiff's favor and awarded her $1.2 million in damages. Specifically, the jury found that (1) plaintiff had engaged in whistleblowing as the trial court had narrowly defined it; (2) plaintiff's act of whistleblowing had been a substantial factor in the Council's decision to discharge her; and (3) plaintiff had suffered damages as a result of her discharge. Despite the jury's verdict, the trial court determined that plaintiff had not proved her statutory whistleblower claim, and it dismissed that claim.

Defendant filed a motion for judgment notwithstanding the verdict on the wrongful discharge claim, arguing that plaintiff's reports did not constitute whistleblowing, that plaintiff had failed to present evidence that a protected disclosure was a substantial factor in her termination, and that the wrongful discharge claim never should have been submitted to the jury because an adequate statutory remedy existed. The trial court denied the motion and entered a judgment for plaintiff on the wrongful discharge claim.

Both parties appealed. Plaintiff assigned error to the trial court's dismissal of her statutory whistleblower claim. Defendant cross-appealed, challenging the court's denial of its motions for directed verdict and motion for judgment notwithstanding the verdict on the wrongful discharge claim and the court's submission of that claim to the jury. Defendant asserted that wrongful discharge is narrowly defined and that plaintiff's report to Jordan that defendant had violated the public meetings law did not provide a basis for a wrongful discharge claim. Defendant had two arguments: first, that plaintiff had created the violation, because it was her responsibility to provide public notice of the March 2014 Council meeting, and second, that

reporting the violation did not rise to the level of fulfilling an important public duty, because plaintiff had no duty to send the memorandum to Jordan and because Jordan had no authority to address the alleged violations of law.

The Court of Appeals reversed the judgment in favor of plaintiff on the wrongful discharge claim and affirmed the dismissal of plaintiff's statutory claim. Regarding the wrongful discharge claim, the Court of Appeals noted that an employee's discharge from at-will employment may be actionable when the employee is discharged for fulfilling an important public duty. *Walker*, 299 Or App at 446. The court also explained that, to determine what constitutes an important public duty, "courts are to review statutes and other sources of authority to determine whether there is a 'substantial public policy' that would be thwarted if the employer were allowed to discharge the employee without liability." *Id.* (internal citation omitted). The court acknowledged that, under its case law, ORS 659A.203(1) "is a statutory source of the important public duty to report government wrongdoing that can support a common-law wrongful-discharge claim." *Id.* at 447. The court added, however, that not every report of employer wrongdoing rises to the level of fulfilling an important public duty. *Id.* In the court's view, a plaintiff must have had an "objectively reasonable belief" that she was reporting a violation of law for the report to constitute both protected whistleblowing and fulfillment of an important public duty, and the court held that "[w]hether plaintiff had an objectively reasonable belief is a question of law for the court." *Id.*

Applying those principles to the facts of the case, the Court of Appeals concluded that plaintiff did not have an objectively reasonable belief that the Council had violated the law. The Court of Appeals reasoned that most of plaintiff's complaints in her memorandum to Jordan—with the exception of the public meetings law violation and the Council's noncompliance with plaintiff's statutory authority as director—"described differences of opinion between plaintiff and the Council concerning governance and 'best practices.'" *Id.* The Court of Appeals then examined whether plaintiff had a reasonable belief that the Council violated plaintiff's statutory authority as CEO and violated the

public meetings law. *Id.* at 448-49. In the court's view, the evidence did not support a reasonable belief on plaintiff's part that the Council had violated the law in either respect. *Id.* at 449. Therefore, the court concluded, the trial court had erred in denying defendant's motions for a directed verdict on plaintiff's wrongful discharge claim. *Id.*

## II.   ANALYSIS

We granted plaintiff's petition for review to address (1) the Court of Appeals' conclusion that plaintiff had failed to establish that, by reporting the Council's violations of law, she had engaged in conduct covered by the wrongful discharge tort and (2) that court's determination that the "objectively reasonable belief" element of whistleblowing is a question of law for the court. Plaintiff argues that, when the Court of Appeals considered whether she had engaged in protected conduct for purposes of her wrongful discharge claim, the court applied an incorrect "legal error" standard of review to the "objectively reasonable belief" element of whistleblowing and failed to view the evidence in the light most favorable to her. Defendant responds that the Court of Appeals correctly understood that the "objectively reasonable belief" element of whistleblowing is a question of law for the court and that, even if the facts are viewed in the light most favorable to plaintiff, she failed to establish that she had fulfilled an important public duty.

As the parties' arguments and the opinion by the Court of Appeals reflect, two legal issues are at play in this case: first, whether the activity that plaintiff claims led to her discharge permitted her to assert her wrongful discharge claim and, second, whether she proved the element of whistleblowing that requires the plaintiff to show that she had a reasonable belief that her employer had violated the law. As we discuss below, those legal issues, albeit related, are functionally different from one another and analytically distinct in this case. Ultimately, we reverse the Court of Appeals because (1) plaintiff was entitled to rely on whistleblowing under ORS 659A.203(1)(b) to establish protected activity under the tort and (2) the "objectively reasonable belief" element of whistleblowing at trial is a question of

fact, not a question of law, which makes all the difference in the standard of review that applies.

A.   *Wrongful Discharge Claim Based on Whistleblowing*

We first address whether plaintiff could assert a tortious wrongful discharge claim based on her claimed protected activity, namely, blowing the whistle on conduct by her employer that she believed was in violation of Oregon law. To resolve that issue, and to clarify the tort for the bar and bench, we embark on a review of the relatively small number of leading cases in which the court's decision centered on the underpinnings of the tort.

Almost all states recognize a cause of action for discharging an employee, including an at-will employee, in violation of public policy, with the vast majority of those states permitting the employee to bring a tort claim for wrongful discharge. *Restatement (Third) of Employment Law* § 5.01 comment a and Reporters' Notes (2014). In *Nees*, this court first recognized that "there can be circumstances in which an employer discharges an employee for such a socially undesirable motive that the employer must respond in damages for any injury done." 272 Or at 218. The employer discharged the plaintiff because she had performed jury service. In affirming the employer's liability in tort, this court examined sources of public policy favoring jury service, including the Oregon Constitution, statutes, and decisional law, and concluded that, if "an employer were permitted with impunity to discharge an employee for fulfilling her obligation of jury duty, the jury system would be adversely affected." *Id.* at 219. In contrast, the following year, the court decided that the plaintiff in *Campbell v. Ford Industries, Inc.*, 274 Or 243, 252, 546 P2d 141 (1976), who was discharged for seeking to inspect corporate records in his capacity as a shareholder, had failed to state a claim for wrongful discharge. The court observed that the primary basis for the right to examine corporate records "is not one of public policy, but the private and proprietary interest of stockholders, as owners of the corporation," and that the plaintiff in *Nees* was discharged for conduct "related much more directly to her rights as an employee." *Id.* at 249-51. From its beginning, then, the wrongful discharge tort developed with an emphasis on the

important public policy underlying the plaintiff's activity that the tort fortifies.

Thereafter, in a series of three cases, the court turned to deciding the availability of the tort when the plaintiff has alternative statutory remedies. First, in *Walsh v. Consolidated Freightways*, 278 Or 347, 352-53, 563 P2d 1205 (1977), the court held that the plaintiff could not assert a wrongful discharge claim when a federal statute provided the plaintiff with full remedies for objecting to unsafe working conditions, his claimed protected activity. In *Brown v. Transcon Lines*, 284 Or 597, 588 P2d 1087 (1978), the court recognized that an employer wrongfully discharges an employee for filing a workers' compensation claim, *id.* at 604, and then analyzed whether a state statute that provided some remedies precluded the plaintiff from pursuing a wrongful discharge claim. Ultimately, the court held that the statutory remedies then available were inadequate and that the legislature had not intended to abolish or negate the tort claim. *Id.* at 611-12. And in *Holien v. Sears, Roebuck and Co.*, 298 Or 76, 689 P2d 1292 (1984), this court similarly held that, through the statutes making sex discrimination an unlawful employment practice, the legislature had not intended to eliminate a common law remedy and that the remedies available to the plaintiff at the time under state and federal antidiscrimination statutes did not provide the plaintiff with necessary make-whole relief. *Id.* at 96-97.

That same year, in *Delaney v. Taco Time Int'l*, 297 Or 10, 681 P2d 114 (1984), this court returned to the question whether the employer's decision to discharge the plaintiff for engaging in claimed protected activity amounted to such a "socially undesirable motive" that the employer must be held liable in tort for damages. *Delaney* involved the employer's termination of the manager of one its restaurants after he refused to sign a report that contained false derogatory statements about a Black employee whom the manager had fired to make room for a white employee, at his district manager's suggestion. 297 Or at 12-13. The court held that the plaintiff proved the tort because of his discharge on the basis that he was required, but refused, to sign a false and potentially defamatory statement. *Id.* at 14.

To explain its holding, the court described its wrongful discharge cases to that point as falling into "three general categories": (1) a case like *Nees*, which the court described as involving a plaintiff who "was discharged for fulfilling a societal obligation"; (2) cases in which the plaintiff pursued a private statutory right, like *Campbell* and *Brown*, with the plaintiff in *Brown* establishing a wrongful discharge claim because the right pursued "related directly to the plaintiff's role as an employee" and the statute "was legislative recognition of an important public policy"; and (3) cases like *Walsh*, "where an adequate existing remedy protects the interests of society so that an additional remedy of wrongful discharge will not be accorded." *Delaney*, 297 Or at 15-16. While the court in *Delaney* likened the plaintiff's protected activity to that of the plaintiff in *Nees*, that is, fulfilling a societal obligation, *id.* at 17, the court did not suggest that it was describing a limited set of protected activities on which an employee could rely when seeking to hold an employer liable for wrongful discharge based on the employer's "socially undesirable motive." *See also Patton v. J. C. Penney Co.*, 301 Or 117, 120-22, 719 P2d 854 (1986), *overruled in part on other grounds by McGanty v. Staudenraus*, 321 Or 532, 549, 901 P2d 841 (1995) (affirming dismissal of a wrongful discharge claim after reviewing precedent and observing that the plaintiff did not allege that his personal relationship with another employee, which triggered his discharge, was in some way protected by statute or involved an interest of public importance).

And in neither of the court's two most recent cases since *Delaney* in which it has closely examined wrongful discharge claims has the court abandoned the focus on evaluating—through review of sources of law—whether an important public policy at the core of the employee's claimed protected activity would be frustrated by permitting the employer to discharge the employee with impunity. In the first, *Babick v. Oregon Arena Corp.*, 333 Or 401, 40 P3d 1059 (2002), the trial court had dismissed the complaint because the plaintiffs, private security employees at a concert arena who had been fired for arresting concert patrons who were using illegal substances, had failed to state a claim for relief. On review, this court referred to two "[e]xamples" of

circumstances in which an employer's discharge of an at-will employee could be wrongful and give rise to tort liability: "(1) when the discharge is for exercising a job-related right that reflects an important public policy" and "(2) when the discharge is for fulfilling some important public duty." *Id.* at 407. The court proceeded to analyze whether the plaintiffs' alleged protected activity, carrying out a duty to make citizen arrests of lawbreakers, was supported by an important public policy by reviewing statutes that the plaintiffs offered as supporting sources of law. The court concluded that the statutes, such as those governing training and licensing for private security personnel and generally permitting citizen arrests, failed to support a "substantial public policy" that required "the kinds of acts that allegedly triggered plaintiffs' discharge." *Id.* at 410.

And in this court's most recent decision on the wrongful discharge tort, *Lamson v. Crater Lake Motors, Inc.*, 346 Or 628, 216 P3d 852 (2009), the court again focused on the sources of law expressing the substantial public policy on which the employee relies and the relationship between the employer's discharge of the employee and frustration of that policy. In that case, the plaintiff contended that his employer discharged him for his internal complaint to management about the use of an outside sales firm, which he thought employed unlawful sales practices, and for refusing to attend the sales event with that firm, even as an observer. *Id.* at 633. The court accepted the plaintiff's theory that Oregon laws reflected an important public policy that prohibits and seeks to prevent deceptive sales practices. *Id.* at 638. But the court then closely examined the plaintiff's factual theories about why he was discharged and the relationship between those theories and the public policy to prohibit and prevent deceptive sales practices. *Id.* at 639-40. To explain why the plaintiff's internal protest related to those types of practices had not "served a public duty or interest," *id.* at 639, this court observed that the plaintiff had not been directed to engage in deceptive practices himself and had not taken the kind of action to stop the practices that the law recognized, *id.* at 640. By contrast, the court noted, "employees may be protected" when reporting an employer's wrongdoing "by means of civil or criminal

channels recognized by law," such as the statute prohibit-
ing employers from discriminating against employees for
reporting criminal activity, ORS 659A.203(1). *Id.* at 640.

In the instant case, plaintiff asserted a wrongful
discharge claim based on allegations that the Council had
discharged her for whistleblowing. She also contended that
whistleblowing is a protected activity under the tort, as evi-
denced by the legislature's enactment of ORS 659A.203(1)
to protect government employees who disclose governmental
violations of law. On review, the parties present the issue
whether whistleblowing by a public employee, that is, report-
ing governmental violations of law as described in that stat-
ute, gives rise to a tort claim for wrongful discharge if the
public employer fires the employee because of that activ-
ity. That is an issue of first impression for this court. And,
while plaintiff assumes that the issue must be decided by
the court as a question of law, defendant requests that this
court expressly hold that the issue is a question of law.

As an initial matter, we hold that whether the
employee has identified an important public policy that lies
at the core of the employee's claimed protected activity and
that would be frustrated by permitting the employer to dis-
charge the employee without consequence is a legal issue
decided by a court. In *Babick*, in which the plaintiffs con-
tended that they had performed a public duty by making
citizen arrests, this court explained that "it is necessary to
'find' a public duty, not create one, using 'constitutional and
statutory provisions, or the case law of this or other jurisdic-
tions.'" 333 Or at 409 (quoting *Babick v. Oregon Arena Corp.*,
160 Or App 140, 144, 980 P2d 1147 (1999), *aff'd in part*, *rev'd
in part*, 333 Or 401, 40 P3d 1059 (2002)). Calling as it does
for an evaluation of sources of law to discern whether the
plaintiff's discharge from employment implicates an import-
ant public policy, that test strongly implies that courts must
decide the matter as a legal question. Earlier cases from this
court confirm that conclusion. *See, e.g.*, *Nees*, 272 Or at 219
(examining Oregon constitutional provisions and statutes
and announcing that "actions by the people, the legislature,
and the courts clearly indicate that the jury system and jury
duty are regarded as high on the scale of American insti-
tutions and citizen obligations"); *accord Delaney*, 297 Or at

17 (concluding that, considering the common law and provisions of the Oregon Constitution, "a member of society has an obligation not to defame others").

In this case, plaintiff has identified ORS 659A.203(1) as a statutory source of law to support her contention that Oregon has an important public policy that protects a government employee who blows the whistle on her employer and that she should be able to recover economic and noneconomic damages from defendant through a common-law wrongful discharge claim. In turn, defendant asserts various arguments related to whether plaintiff proved the elements of whistleblowing, but defendant does not claim that plaintiff failed to identify an important public policy that is supported by sources of law. For example, defendant asserts that plaintiff misdirected her report of the Council's violations to Jordan, who purportedly had no authority to take action as the head of DAS, and that plaintiff could not have had a reasonable belief that the Council had violated any law, because the circumstances merely involved an ongoing dispute concerning the scope of plaintiff's authority rather than the Council's violations of laws. Yet the proper focus of the legal question at hand is not whether plaintiff proved whistleblowing. Rather, the question is whether plaintiff identified an important public policy animating her activity that would be thwarted by permitting defendant to discharge her without potential liability in tort.

As we affirmed in *Babick*, that determination rests first on sources of law evidencing the asserted public policy. The court also cautioned in *Lamson* that "the sources of law that express the asserted 'public policy' must in *some* sense speak directly" to the acts taken by the plaintiff that led to the discharge from employment. 346 Or at 638 (emphasis in original). Applying that analytical framework, we agree with plaintiff that she relied on an important public policy that supports a wrongful discharge claim.

Under ORS 659A.203(1), a public employer may not

"(b)   Prohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of:

"(A)   A violation of any federal or state law, rule or regulation by the state, agency or political subdivision."

The statute thus explicitly protects the employment of public employees who report an employer's "violation of any \*\*\* law." *Id.* The legislature's enactment of such a broad protective statute for public employees demonstrates the existence of a significant public policy aimed at protecting public employees who come forward with reports of wrongdoing by their government employers, and the statute "speak[s] directly" to the protected nature of an employee's report of her employer's wrongdoing.

By contrast, our decision in *Babick* is instructive in describing an instance in which sources of law failed to speak directly to the employee's allegedly protected acts. In the decision that this court overturned in *Babick*, the Court of Appeals had relied on various statutes, which related to general public safety and authorized citizen arrests, to conclude that those statutes established an important public policy favoring a safe community and law enforcement by citizens when police officers are not present. *Babick*, 160 Or App at 144-46. In reversing the Court of Appeals, this court observed that the statutes were "far too general" to support a wrongful discharge claim for fulfilling an important public duty. *Babick*, 333 Or at 409. But the same critique cannot be made regarding the statute on which plaintiff relies here. An employee who reports a public employer's violations of law enjoys protection under ORS 659A.203(1) from discharge or other disciplinary action. Thus, for purposes of the analysis of plaintiff's wrongful discharge claim, we hold that Oregon has an important public policy protecting a government employee who blows the whistle on her employer.

We note, however, that common-law wrongful discharge is an interstitial tort: The tort may only be invoked when another claim does not provide a plaintiff with an adequate remedy. *Walsh*, 278 Or at 352-53 (rejecting wrongful discharge claim because existing remedies under federal law were "adequate to protect both the interests of society \*\*\* and the interests of employees"); *Delaney*, 297 Or at 16 (recognizing that, in some cases, employees could not recover in tort because "an adequate existing remedy

protects the interests of society so that an additional remedy of wrongful discharge will not be accorded"). As the Court of Appeals previously has stated, the wrongful discharge tort is "designed to fill a gap where a discharge in violation of public policy would otherwise not be adequately remedied." *Dunwoody v. Handskill Corp.*, 185 Or App 605, 613, 60 P3d 1135 (2003). Although plaintiff in this case brought both a statutory whistleblowing claim and a common-law wrongful discharge claim, a plaintiff could not do so today under the current statute.[4]

Although, in this case, the Court of Appeals correctly concluded that whistleblowing in the public employment context can give rise to a wrongful discharge claim, *Walker*, 299 Or App at 447, it incorrectly suggested that the existence of that important public policy rests on a court's legal determination of the plaintiff's reasonable belief that her employer violated the law in the whistleblowing context. Whether a plaintiff has asserted an important public policy by virtue of whistleblowing protected by ORS 659A.203(1) is a legal question that does not require a court to conduct a conjoined analysis of the reasonableness of the plaintiff's belief that her employer violated the law.

Although the question of whether a wrongful discharge claim implicates an important public policy is a question of law for the court, that does not mean that resolution of the entire claim is for the court. Whether an employee had an objectively reasonable belief that her employer violated the law is a separate element of a common-law wrongful discharge claim based on whistleblowing protected under ORS 659A.203(1). And, whether a plaintiff can establish that

_____

[4] When this case was litigated in 2015, the statutory claim was not as protective as the common-law wrongful discharge claim. Under the 2015 version of ORS 659A.203, the statute provided only equitable remedies. Given the gap in the available remedies, plaintiff was able to assert both claims. In 2016, the legislature amended ORS 659A.203 to provide additional remedies, including compensatory damages. *See* Or Laws 2016, ch 73, § 4 (amending ORS 659A.203 (2015); ORS 659A.203(3) (2019) (allowing for any remedy under ORS 659A.199); ORS 659A.199 (allowing for remedies provided by ORS chapter 659A); ORS 659A.885(3)(a) (allowing the trial court to award compensatory damages). A plaintiff today, therefore, would be afforded a complete remedy under the current statute and could no longer bring both a statutory whistleblowing claim under ORS 659A.203 and a common-law wrongful discharge claim.

separate element is, in most cases, an issue reserved for the trier of fact.

### B.　*Plaintiff's Reasonable Belief as to Violation of Law*

In light of plaintiff's theory that she was wrongfully discharged for statutorily protected whistleblowing, plaintiff proceeded at trial to prove the elements of statutory whistleblowing. The disputed element in this case concerned whether plaintiff had proved that her belief that her employer had violated the law was reasonable. In evaluating reasonableness, the Court of Appeals held that "[w]hether plaintiff had an objectively reasonable belief is a question of law for the court." *Walker*, 299 Or App at 447 (internal quotations omitted). We disagree.

In holding that a plaintiff's reasonable belief is a question of law in a whistleblowing claim, the Court of Appeals relied on one of its own cases, *Miller v. Columbia County*, 282 Or App 348, 385 P3d 1214 (2016), *rev den*, 361 Or 238 (2017). *Miller* involved a civil action for false arrest and malicious prosecution in an underlying criminal case. *Id.* at 349. The Court of Appeals in that case reviewed whether a police officer had a reasonable belief that a plaintiff had committed a crime, and whether that officer had probable cause to make an arrest, as a question of law. *Id.* at 355-56, 358. The issue in *Miller* concerned the reasonableness of a police officer's beliefs in the context of police actions (a stop and an arrest), as to which courts apply legal doctrines that flow from basic constitutional protections against unreasonable government seizures. *Miller* did not involve any issue relating to wrongful discharge, whistleblowing, or employment law generally. We are unpersuaded by the Court of Appeals' reliance on *Miller* to support its conclusion that the same legal-error standard of review at issue there is warranted to measure an employee's belief that her employer violated the law before she reported the violation.

Rather, we are persuaded that the issue is a question of fact that can generally be left to jurors, a conclusion that the Court of Appeals had already reached before it decided *Walker*. In *Hall v. State of Oregon*, 274 Or App 445, 366 P3d 345 (2015), the trial court granted the employer's motion for summary judgment on the plaintiff's statutory public employee

whistleblower and wrongful discharge claims. The Court of Appeals reversed on appeal, concluding that the plaintiff had "presented evidence to create a genuine issue of material fact that he acted with subjective, good faith" and "that he had an objectively reasonable belief for purposes of ORS 659A.203." *Id.* at 454. The court explained that the plaintiff's evidence "could support a finding" of his reasonable belief. *Id.* And like defendant in this case, the state employer in *Hall* argued that, "because the report was not objectively reasonable, plaintiff could have no wrongful discharge claim." *Id.* at 455. But the Court of Appeals rejected that argument because the plaintiff "presented evidence sufficient to create a question of fact as to the objective reasonableness of his report." *Id.*; *accord Love v. Polk County Fire District*, 209 Or App 474, 495, 149 P3d 199 (2006) (holding that a genuine issue of material fact existed regarding whether the plaintiffs' belief that the marshal was unlawfully backdating documents in a cover-up was objectively reasonable).

The reasonableness of an employee's belief about her employer's violation of law is similar to the kind of factual determination about reasonableness that jurors routinely make in civil claims alleging negligence. In the context of negligence, this court has held that whether a tortfeasor acted reasonably under the duty element is a question of fact. *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987). In *Fazzolari*, a student was sexually assaulted on school grounds and alleged that the school district failed to protect her after similar attacks had occurred in the area weeks before the assault. *Id.* at 3. The court held that whether the school district acted reasonably under its duty to protect the student from reasonably foreseeable harm was a question of fact for the jury. *Id.* at 19. In holding that the determination of reasonableness is a question of fact, the court relied on *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 608, 469 P2d 783 (1970) to reiterate that "[a]s far as 'negligence' rests on a standard of reasonable conduct, the issue ordinarily can be left to the jury ***." *Id.* at 12.

The question of the reasonableness of a plaintiff's belief also arises in other types of employment-related claims, and the question generally is one of fact for the jury. For example, the reasonableness of a plaintiff's belief

or perception is an element in employment discrimination cases brought under Title VII of the Civil Rights Act of 1964 that involve hostile work environments. The United States Supreme Court has stated that a plaintiff may establish a hostile work environment "[s]o long as the environment would reasonably be perceived, and is perceived, as hostile or abusive \*\*\*." *Harris v. Forklift Systems Inc.*, 510 US 17, 22, 114 S Ct 367, 126 L Ed 2d 295 (1993); *see also Montell v. Diversified Clinical Services, Inc.*, 757 F3d 497, 505 (6th Cir 2014) (reversing summary judgment on state law retaliation claim because evidence was sufficient to show that the plaintiff could have had an objectively reasonable belief that her supervisor unlawfully sexually harassed her before she reported it, and her belief was a question of credibility for a jury).

And specifically with respect to whistleblower protection for employees, other jurisdictions also conclude that the reasonableness of the plaintiff's belief that the employer was violating the law is a question of fact. In an article on whistleblowing in private employment, one author has noted that the issues of

"[w]hether an employee made a report both in good faith and with a reasonable belief within the meaning of a whistleblower statute have been construed as questions of fact.

"\*\*\*\*\*

"If a statute protects an employee for reporting suspected violations, the reasonableness of the employee's suspicions is a question of fact, typically for the jury to resolve."

Frank J. Cavico, *Private Sector Whistleblowing and the Employment-at-Will Doctrine: A Comparative Legal, Ethical, and Pragmatic Analysis*, 45 S Tex L Rev 543, 615-16 (2004) (internal references omitted).

Similarly, other states with whistleblower protections for public employees also reserve the issue of the reasonableness of the plaintiff's belief for the trier of fact. The New Jersey Supreme Court has held that, in a statutory whistleblowing action, whether an employee had a reasonable belief that her employer violated the law is a question of fact for

the jury. *Dzwonar v. McDevitt*, 177 NJ 451, 464, 828 A2d 893 (2003). In *Dzwonar*, the plaintiff contended that the employer's executive board had wrongfully discharged her because of her complaints that the board had violated federal law and its own bylaws. *Id.* at 456, 828 A2d at 896. On review, the New Jersey Supreme Court addressed the elements of a whistleblowing claim under the applicable New Jersey statute.[5] *Id.* at 462, 828 A2d at 900. The court held that, when a plaintiff brings a whistleblowing claim pursuant to the statute, it is a question of law for the trial court to determine whether a source of authority or an expression of public policy would be thwarted if the alleged violation were true. *Id.* at 463, 828 A2d at 901. Once the court makes that legal determination, the jury usually determines whether the employee's belief concerning the alleged violation of law was reasonable. *Id.* at 464, 828 A2d at 902. As the New Jersey Supreme Court explained, a plaintiff

> "must set forth facts that would support an objectively reasonable belief that a violation has occurred. In other words, when a defendant requests that the trial court determine as a matter of law that a plaintiff's belief was not objectively reasonable, the trial court must make a threshold determination that there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the plaintiff. If the trial court so finds, *the jury then must determine whether the plaintiff actually held such a belief and, if so, whether that belief was objectively reasonable.*"

*Id.* at 464, 828 A2d at 901-02 (emphasis added).

In sum, unless the trial court concludes that the record is such that no reasonable juror could find for the plaintiff on the issue, whether the employee held a reasonable

---

[5] New Jersey's whistleblowing statute, the Conscientious Employment Protection Act (CEPA), NJ Stat Ann § 34:19-3, closely resembles Oregon's public employee whistleblowing statute. CEPA provides that an employer may not retaliate against an employee who:

> "a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy, or practice of the employer *** that the employee reasonably believes:

> "(1) is in violation of a law, or a rule or regulation promulgated pursuant to law ***."

NJ Stat Ann § 34:19-3.

belief that the employer violated the law is an issue of fact for the jury. With that legal framework established, we turn to the second issue that the parties raise: whether the jury could find that plaintiff had a reasonable belief that the Council violated the law when she sent her memorandum to Jordan.

The jury was instructed that, for the plaintiff to recover for wrongful discharge, it had to find that (1) she was discharged, (2) that a substantial factor in the decision to discharge her was that she had "engaged in whistleblowing," and (3) that she suffered damages. The jury also was instructed that, to prove that she had engaged in whistleblowing, plaintiff was required to prove the reasonableness of her belief; specifically, she had to show that she "disclos[ed] information that the plaintiff *reasonably believed* was evidence that her [public] employer \*\*\* [v]iolat[ed] \*\*\* a state or federal law, rule, or regulation." (Emphasis added.) The trial court rejected defendant's motions for directed verdict, presented those issues for the jury to resolve, and the jury returned a verdict in favor of plaintiff.

Plaintiff asserts, and we agree, that the Court of Appeals did not employ the correct standard of review when evaluating the reasonable-belief element of her claim. The element was a question of fact, not a question of law for the court. When a trial court has denied a defendant's motion for directed verdict, and the jury has issued a verdict in favor of the plaintiff, a reviewing court cannot overturn the verdict "unless [it] can affirmatively say that there is *no* evidence from which the jury could have found the facts necessary to establish the elements of plaintiff's cause of action." *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984) (emphasis added). The reviewing court does not weigh the evidence; it considers the evidence, including inferences, in the light most favorable to plaintiff. *Id.*

Viewing the record in the light most favorable to plaintiff for any evidence to support the jury's finding, we conclude that the evidence permitted the jury to find that plaintiff had a reasonable belief that the Council violated the law, either through violating her statutory authority as

CEO under ORS 377.835(7) or violating the public meetings law, or both.

Plaintiff produced evidence to support the jury's finding that she had a reasonable belief as to the Council's violation of law. A factfinder could have found that the Council violated plaintiff's authority as CEO under ORS 377.835(7) based on evidence that (1) plaintiff was hired shortly after a Secretary of State audit noted that the agency needed greater transparency and accountability; (2) plaintiff was hired to implement the Secretary of State's audit recommendations, which noted that the agency needed greater transparency and accountability, and recommended that the agency implement an employee classification and salary structure; (3) plaintiff had the statutory authority to set staff salaries; (4) the Council rejected plaintiff's proposed salary structure that modeled the DAS system salary range; (5) plaintiff testified that she did not believe that the new salary implementation impacted the budget and, thus, she did not believe that Council approval was necessary before implementation; and (6) plaintiff's memorandum to Jordan reported that plaintiff believed that the Council was exceeding its statutory authority and effectively performing plaintiff's statutory duties that are reserved for the CEO, a professional executive administrator.

Additionally, a factfinder could have found that plaintiff reasonably believed that the Council had violated the public meetings law based on the evidence that (1) the Council chair requested the March 2014 meeting after finding out that plaintiff implemented a new salary structure; (2) an attorney with the Department of Justice told plaintiff's executive assistant that the March 2014 meeting was supposed to be noticed as a public meeting; (3) the Council chair instructed plaintiff's executive assistant not to notice the March 2014 meeting; (4) plaintiff served "at the pleasure of the [C]ouncil" under ORS 377.835(7); (5) plaintiff testified that she obeyed the Council chair's instruction about not providing public notice of the March 2014 meeting because she felt that she was at risk for termination at that meeting and did not want to further upset the Council beforehand; (6) plaintiff conferred with a Department of Justice lawyer before the March 2014 meeting because she feared that

she would be terminated at that meeting; and (7) plaintiff reported the violation to Jordan, the head of DAS, because DAS had the authority to ensure ongoing compliance in the future.

We are unpersuaded by defendant's argument that plaintiff could not have had a reasonable belief that the Council violated the law, either under ORS 377.835(7) or under the public meetings law. Defendant asserts that if any violation of law did occur—namely, under the public meetings law—it only occurred because plaintiff had violated the law herself by not fulfilling her responsibilities as director. Additionally, defendant contends that the Council acted within its statutory authority to set budgets and limit the CEO's actions. Although those arguments certainly constituted defendant's case and could have permitted the jury to render a defense verdict, the jury rejected the defense theory of the case and accepted plaintiff's theory instead. The trial court did not err by denying defendant's motions for directed verdict and judgment notwithstanding the verdict and entering a judgment in plaintiff's favor on her wrongful discharge claim. The Court of Appeals erred in reversing on that claim.

Our disposition is affected by plaintiff's challenge to the trial court's dismissal of her statutory whistleblower claim. Before the Court of Appeals, plaintiff argued that the trial court was obligated to give credit to the jury's findings on the wrongful discharge claim in her favor when the trial court considered her statutory claim, for which only equitable relief was provided. The Court of Appeals rejected that assignment of error because it reversed the wrongful discharge claim, concluding that the jury should not have considered the wrongful discharge claim. We therefore remand the case to the Court of Appeals to decide that assignment of error anew.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.