Argued and submitted May 24, affirmed September 28, 2022, petition for review denied January 19, 2023 (370 Or 714)

Cindy RODRIGUEZ,
*Plaintiff-Appellant,*

*v.*

UNION PACIFIC RAILROAD COMPANY,
a foreign corporation,
*Defendant-Respondent,*
*and*

GENESSE & WYOMING RAILROAD SERVICES, INC.,
a foreign corporation et al.,
*Defendants.*

Multnomah County Circuit Court
19CV18032; A175497

519 P3d 148

Plaintiff, who was seriously injured when she was struck by a freight train while crossing a set of tracks in a marked crosswalk while looking at her cell phone, appeals from a limited judgment for defendant Union Pacific Railroad Company (UP), challenging the trial court's granting of UP's motion for summary judgment on her personal injury claim. She asserts that the trial court erred in concluding that her claim is barred by federal preemption of claims relating to the design of a railroad crossing, because her complaint and the record on summary judgment support a claim of negligence based on site obstruction by vegetation, which is not subject to preemption. *Held*: The Court of Appeals held that the asserted theory of negligence due to site obstruction is not reasonably encompassed within the allegations of the complaint; thus, the trial court did not err in granting UP's motion for summary judgment based on federal preemption.

Affirmed.

Melvin Oden-Orr, Judge.

J. Randolph Pickett argued the cause for appellant. Also on the opening brief were R. Brendan Dummigan, Kimberly O. Weingart, Shangar S. Meman, Rachel M. Jennings, and Pickett Dummigan McCall LLP. Also on the reply brief were Shangar S. Meman, Rachel M. Jennings, and Pickett Dummigan McCall LLP.

Thomas M. Christ argued the cause for respondent. Also on the brief was Sussman Shank LLP.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

Plaintiff appeals from a limited judgment for defendant Union Pacific Railroad Company (UP), challenging the trial court's granting of UP's motion for summary judgment on her personal injury claim. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. ORCP 47 C; *Chapman v. Mayfield*, 358 Or 196, 204, 361 P3d 566 (2015). That standard is satisfied when, viewing the evidence in the record and all reasonable inferences that may be drawn from it in favor of the nonmoving party, no reasonable factfinder could return a verdict for the nonmoving party. *Id*. We conclude that the trial court did not err in granting UP's motion for summary judgment and therefore affirm.

Plaintiff was seriously injured when she was struck by a freight train while crossing a set of tracks in a marked crosswalk while looking at her cell phone. The tracks are owned and maintained by UP. Plaintiff has no personal recollection of what happened before she was hit by the train. The record on summary judgment includes photos that show a row of trees to the left of the tracks just outside of the crossing. The record includes a video of the accident taken by a camera mounted on the front of the locomotive. Train personnel who viewed the video testified by deposition that the trees could have blocked train operators' views of a pedestrian approaching the crossing from the southwest corner of the intersection where plaintiff entered the crossing.[1]

Plaintiff brought claims against UP, among others.[2] Paragraphs 6 through 9 of plaintiff's first amended complaint included descriptions of the intersection, the tracks, the warning systems, and the pedestrian crossing, noting particularly the absence of "pedestrian safety gates," signage, or warning lights at the pedestrian crossing

---

[1] The record on summary judgment also includes evidence that the crossing's gates and warning signals, including bells, and the train's horn were fully operational and engaged at the time of the accident, but that plaintiff apparently did not notice them. There was evidence that motorists stopped at the intersection who did see the train and did hear the horns and bells were honking their own horns and yelling to get plaintiff's attention.

[2] Claims against other defendants are stayed pending appeal.

itself.[3] Plaintiff alleged that it is "only by chance" that the crossing arms and flashing lights that are positioned and aimed to be optimally viewed by motorists "are within the line of sight of pedestrians." Paragraph 13 of the complaint included nine subparagraphs alleging conditions that made the crossing unreasonably dangerous.[4] Paragraph 15

---

[3] Paragraph 7 alleges:

"There are no pedestrian safety gates or flashing warning lights in a pedestrian's line of sight and/or line of travel, to provide visual warning prior to crossing any of these tracks. There are no audible warning signals for pedestrians approaching the tracks to provide localized audible warning of the approach of a train when crossing any of the tracks. There are bells that ring when the crossing arms are lowered into position. These which are positioned to block the travel of motor vehicles but not pedestrians[.]"

[4] Paragraph 13 alleged:

"The presence of one or more of the following conditions combined to make the Crossing unreasonably dangerous:

"a) There were no gates specifically for pedestrians, as there were for motor vehicles, that would prevent pedestrians from walking across one of the grade crossing crosswalks at the Crossing when a train was approaching;

"b) The Crossing had crossing gates equipped with flashing red lights that came down to block vehicular traffic, approaching from both directions on S.W. Farmington Road and from both directions on S.W. Lombard Avenue, from crossing the tracks as trains were arriving, but had no similar crossing gates or flashing lights that would close, block access to, or otherwise impede pedestrians from crossing the tracks as trains were arriving, and unequivocally warn of the presence of approaching trains;

"c) The crossing arms and towers at the Crossing contained warning bells that are designed to begin sounding an audible alarm approximately twenty (20) to thirty (30) seconds before a train arrives at the Intersection and to continue ringing as the train passes through the Crossing. These warning bells contribute to the ambient background noise of the busy intersection;

"d) There were no swing gates or other forms of channeling for pedestrians at the Crossing, which would force the person on foot to actively open the gate, and which would delineate the most dangerous area of the pathway for pedestrians;

"e) There was no signage on poles, no signage on the ground and no gates delineating the combined pedestrian roadway and pedestrian grade crossing on the western edge of the Crossing as there were on the two other pedestrian grade crossings at the Intersection;

"f) The pedestrian grade crossing on the western edge of the Crossing was both a pedestrian crossing over S.W. Farmington Road and an unmarked pedestrian grade crossing, which would be confusing for pedestrians proceeding across it and which would increase the number of places that a pedestrian would need to look for oncoming vehicular and train traffic;

"g) Lines of sight, from the perspective of a pedestrian about to cross northward on the western edge of the crossing, were restricted to the approach of trains from the southeast from the northern track to the northwest, limiting a pedestrian from seeing an approaching train from either of

alleged six specifications of negligence.[5]

Before the hearing on defendant's motion for summary judgment, plaintiff sought leave to file a second amended complaint to add allegations to paragraphs 13 and 15 "relating to vegetation at the scene of the incident that interferes with sight lines from the cab of the locomotive

---

those directions prior to proceeding across the Intersection, and was behind a pedestrian heading northward across the combined roadway/grade crossing when it opened up;

"h)  This Crossing is unusual in nature - there are two separate rail tracks that are parallel on the east side of the Intersection, but the tracks diverge in the middle of the Intersection, with one going west, and one going north;

"i)  A substantial change in the configuration of the crosswalks at the Intersection occurred from approximately 2007 through 2009, during which time a crosswalk was added on the west side of the Intersection, allowing pedestrians to cross the rail tracks from the southwest quadrant to the northwest quadrant. *** [T]he new west-side crosswalk requires pedestrians to cross the rail tracks owned, maintained, and/or controlled by defendant UP and the G&W defendants at a more oblique angle than the older east-side crossing, and to look back over their shoulders to determine whether a train is approaching[.]"

[5] Paragraph 15 of the complaint alleged that UP was negligent:

"a)  In maintaining the Crossing in a dangerous condition for pedestrians;

"b)  In failing to warn the public in general, and plaintiff in particular, of the dangerous conditions that existed for pedestrians at the Crossing, as described in ¶13 above, when defendants knew, or in the exercise of reasonable care, should have known, of the unreasonably dangerous and reasonably foreseeable, risk of harm to pedestrians of being hit by a train;

"c)  In failing to provide any or adequate audible or visual warnings, specifically directed to pedestrians at or near the Crossing in general, and plaintiff in particular at the combined pedestrian roadway and pedestrian grade crossing, to warn them of the approaching Train, at a time when defendant UP knew, or in the exercise of reasonable care, should have known, of the unreasonably dangerous and reasonably foreseeable, risk of harm to pedestrians of being hit by a train;

"d)  In failing to maintain a physical barrier of any type to prevent pedestrians in general, and plaintiff in particular, from entering the crosswalk when the Train was approaching;

"e)  In failing to maintain swing gates, channeling, and/or signage for pedestrians, that force the pedestrian to actively enter the crossing by opening the gate, or going through the channels, and that would delineate the most dangerous portion of the crossing, and provide an optimal opportunity for pedestrians to look both ways before they cross at a time when approaching trains were visible;

"f)  In failing to maintain directional gates for pedestrians approaching tracks that put pedestrians in a position to see trains approaching the intersection from all directions as pedestrians are traversing the combined pedestrian roadway and pedestrian grade crossing."

to plaintiff, a pedestrian, as she was walking towards the railroad crossing." The trial court denied plaintiff's motion.[6]

In its motion for summary judgment, UP contended among other arguments that plaintiff's claims are preempted by the Federal Railroad Safety Act, 49 USC § 20106 (FRSA). *See Norfolk S. Ry. Co. v. Shanklin*, 529 US 344, 120 S Ct 1467, 146 L Ed 2d 344 (2000) (holding that the FRSA, by virtue of 23 CFR §§ 646.214(b)(3) and (4) (1999), preempts state tort claims concerning a railroad's failure to maintain adequate warning devices at crossings where federal funds have participated in the installation of the devices). In response, plaintiff acknowledged that under *Shanklin*, claims relating to the design and construction of the crossing and its warning devices are preempted. Plaintiff contended, however, that claims based on a theory of common law "premises liability" are possibly available. Plaintiff further noted that the United States District court in Oregon has held, in *Murrell v. Union Pac. R. R. Co.*, 544 F Supp 2d 1138, 1154 (Dist Or 2008), that claims relating to sight-line obstructions, including obstructions due to vegetation along the rail line, are not preempted. Among the specifications of negligence in the complaint, paragraph 15a alleged that UP was negligent in "maintaining the Crossing in a dangerous condition for pedestrians[.]" Plaintiff contended in her memorandum in opposition to UP's motion that that allegation was broad enough to encompass negligence relating to the train operators' line of sight and to allow evidence of vegetation obstructing the train operators' sight. Plaintiff cited evidence in the record on summary judgment that she contended would allow a finding that the train operators' sight line was obstructed by vegetation—the line of trees—near the tracks approaching the crossing. Plaintiff argued that "the nature of the sight obstruction at the crossing and whether a pedestrian or operator must come dangerously close to causing an incident before being able to see the conditions at the crossing are factual questions for the jury."

---

[6] The trial court denied plaintiff's motion "because plaintiff's counsel's conferral email to defendants' counsel, which attached a copy of the proposed second amended complaint, did not satisfy the conferral requirements of UTCR 5.010, which requires an in-person or telephonic conferral." The trial court's ruling is not challenged on appeal.

UP replied that the complaint's factual allegation relating to line of sight was in paragraph 13g, not paragraph 15a, and that it related only to a pedestrian's line of sight,[7] not to the train operators' line of sight. UP further replied that there were *no* allegations in the complaint relating to vegetation and reminded the court that it had denied plaintiff's request to amend the complaint to include such allegations. Thus, UP argued, a claim based on obstruction of the train operator's sight line caused by vegetation was not before the court.

At oral argument on the motion before the trial court, plaintiff made no mention of either vegetation or the sight line of the train operators but did briefly argue that a claim based on obstruction of the *pedestrian's* sight line could survive summary judgment.

UP conceded that federal preemption would not apply to a claim based on sight-line obstructions that were not related to the design of the crossing, such as those caused by vegetation or structures. But UP argued that, in the context of the complaint as a whole, which did not mention the presence of vegetation, plaintiff's allegation at paragraph 13g must be understood to relate only to sight-line restrictions from the design of the crossing, rather than obstructions, and was therefore preempted. Additionally, UP pointed out that the complaint included no allegation relating to the obstruction of the *train operators'* sight line.

The court said that it had watched the video recording of the accident and that it seemed to show that, because of the presence of vegetation, plaintiff would not have been able to see the train coming until she was almost through the intersection. The court asked what to make of that evidence. UP's counsel answered that, in the absence of an allegation relating to sight-line obstruction caused by vegetation, the evidence was irrelevant. Additionally, UP's counsel argued that, in light of evidence in the record that plaintiff was looking at her cell phone at the time she stepped into

---

[7] Paragraph 13g alleged that the crossing was unreasonably dangerous because "[l]ines of sight, *from the perspective of a pedestrian* about to cross northward on the western edge of the crossing, were restricted to the approach of trains from the southeast from the northern track to the northwest[.]" (Emphasis added.)

the crossing, it was pure speculation whether plaintiff's view of the train would have been blocked by vegetation. UP argued that the court should disregard the video evidence.

The trial court granted UP's motion for summary judgment. In its letter opinion, the court rejected plaintiff's contention that a claim based on common law "premises liability" would be distinct from the state law tort claims that are subject to preemption. The court also rejected plaintiff's contention that the complaint alleged a claim based on sight-line obstruction. The court explained that, although plaintiff's memorandum in opposition to UP's motion had made reference to evidence relating to the *train operators'* sight line, the complaint itself made no allegations with respect to train operators' line of sight. The court further concluded that the specification of negligent maintenance at paragraph 15a did not encompass a sight-line theory of negligence. The court concluded:

> "Based on the Court's review of the Amended Complaint, only issues regarding the pedestrian's line of sight are alleged. Thus, Plaintiff's arguments regarding the train operators' visibility and line of sight fail to raise an issue of material fact."

On appeal, plaintiff contends that the trial court erred in granting UP's motion for summary judgment. Plaintiff contends that there is a strong presumption against federal preemption, and that, even in the absence of a specific allegation in the complaint relating specifically to the presence of vegetation, the allegations of the complaint, read as a whole—in particular, paragraph 13a, alleging that the pedestrian's line of sight was restricted, and the general allegation at paragraph 15a that UP was negligent in "maintaining the Crossing in a dangerous condition for pedestrians"—are broad enough to state a theory of liability that vegetation impaired the sight line of pedestrians and train operators,[8] and that the record on summary judgment in fact includes evidence of an impaired sight line of train operators due to the presence of the trees.

---

[8] At oral argument, plaintiff's counsel acknowledged that, based on the allegations of the complaint, "the concern is that the *pedestrian* could not see the train." (Emphasis added.)

UP responds that plaintiff's whole argument on appeal is in support of a theory of liability that is not in the case. UP argues that the first amended complaint cannot reasonably be construed to include a theory of liability based on sight-line obstruction by vegetation, pointing out that the trial court expressly denied plaintiff's motion to amend the complaint to allege such a theory. UP argues that pleadings matter and that an absence of allegations relating to vegetation precludes liability on that theory. *See Kiryuta v. Country Preferred Ins. Co.*, 273 Or App 469, 473-74, 359 P3d 480 (2015), *aff'd*, 360 Or 1, 376 P3d 284 (2016) ("In this state, a party's pleadings matter, and '[i]t is a theory long in use in the practice of law that the pleadings declare and control the issues to be determined and the relations that the parties bear to each other.'" (quoting *Warner v. Synnes et al.*, 114 Or 451, 459-60, 235 P 305 (1925)).

We agree with UP. It would be an unreasonable extension of the pleadings to conclude that the first amended compliant encompasses the theory of liability that plaintiff asserts on appeal—that plaintiff's view of an oncoming train was obstructed by vegetation just outside of the crossing. Despite the complaint's detailed description of the conditions of the intersection and the crossing, and the nine ways in which the crossing was alleged to be unreasonably dangerous as described in paragraph 13, there is no mention of the presence of vegetation near the crossing or to the obstruction of pedestrians' views by vegetation near the crossing. Reading the complaint as a whole, the allegation of ultimate fact at paragraph 13g that a pedestrian's line of sight was "restricted" must be read to refer to restrictions caused by the many "unreasonably dangerous" conditions *of the crossing* itself, and not an obstruction caused by vegetation outside of the crossing. For example, paragraph 13i alleges that the crossing where plaintiff was injured requires pedestrians to enter the crossing at "a more oblique angle than the older east-side crossing, and to look back over their shoulders to determine whether a train is approaching." Additionally, there is no specification of negligence based on the presence of vegetation near the crossing. Paragraph 15a alleges negligence in the maintenance of *the crossing*, not in conditions around the crossing.

We conclude that sight-line obstruction caused by the presence of vegetation near the crossing is a theory of liability that is different from the theories of liability described in the complaint, which are based on the conditions of the crossing itself, not sight-line obstructions due to vegetation outside of the crossing. Plaintiff's arguments and cited evidence relating to the presence of vegetation near the crossing that obstructed views present a theory that is outside of the pleadings.

Summary judgment does not present an opportunity to assert a theory of liability that is not in the pleadings. *Permapost Products Company v. Osmose, Inc.*, 200 Or App 699, 705, 116 P3d 909 (2005) (explaining that, although a party may add a legal theory at summary judgment, under ORCP 23 "we cannot treat the pleadings as amended to include plaintiff's [new legal theory] unless plaintiff obtained the consent of the court or of defendant"). Thus, we agree with the trial court that plaintiff's arguments and evidence concerning sight-line obstruction caused by vegetation cannot be considered.

Finally, we are not aware of any authority in support of plaintiff's argument that common law "premises liability" is a theory of negligence that would provide an exception to the preemption of federal law relating to the design of railroad crossings. We conclude that the trial court did not err in granting UP's motion for summary judgment.

Affirmed.